IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN, MILWAUKEE DIVISION

CHAUNTE OTT,                              )
                                          )
        Plaintiff,                        )
                                          )
        vs.                               )
                                          )
CITY OF MILWAUKEE, Former Milwaukee       )
Police Department Chiefs ARTHUR L.        )
JONES and NANETTE H. HEGARTY, as well     )
as Present and Former Detectives          )
CARL BUSCHMANN, JAMES DEVALKENAERE,       )
ROBERT SIMON, ERIC MOORE, RICKY BUREMS,   )
MICHAEL VALUCH, PERCY MOORE, MICHAEL      )
DUBIS, and OTHER AS-OF-YET UNKNOWN        )
EMPLOYEES OF THE CITY OF MILWAUKEE,       )
                                          )
        Defendants.                       )   JURY TRIAL DEMANDED

**COMPLAINT**

NOW COMES Plaintiff, CHUANTE OTT, by and through his attorneys, LOEVY & LOEVY, and complaining of Defendants, CITY OF MILWAUKEE, FORMER POLICE CHIEF ARTHUR L. JONES, FORMER POLICE CHIEF NANETTE H. HEGARTY, DETECTIVE CARL BUSCHMANN, DETECTIVE JAMES DEVALKENAERE, DETECTIVE ROBERT SIMON, DETECTIVE ERIC MOORE, DETECTIVE RICKY BUREMS, DETECTIVE MICHAEL VALUCH, DETECTIVE PERCY MOORE, DETECTIVE MICHAEL DUBIS and OTHER AS-YET UNKNOWN EMPLOYEES OF THE CITY OF MILWAUKEE [hereinafter "Defendant Officers" or "Defendants"], and alleges as follows:

## Introduction

1. Plaintiff Chaunte Ott spent 13 years in prison for a murder that he did not commit. Arrested at age 21, he was sentenced to life in prison.

2. Mr. Ott was convicted after the police manipulated witnesses and fabricated evidence. Most centrally, Defendants managed to procure statements from two men, both describing how Mr. Ott supposedly killed a young woman. Mr. Ott has consistently maintained that these witness statements obtained by the police were coerced and false.

3. While Mr. Ott languished in prison, the real killer was left at large to kill again, which he did, repeatedly.

4. In 2002, the Wisconsin State Police Crime Laboratory recovered a DNA profile from the vaginal swabs of the victim in Mr. Ott's case; the profile affirmatively excluded Mr. Ott.

5. The DNA profile was subsequently matched to a serial killer named Walter E. Ellis, whose DNA has been found in and on victims in at least eight other murders from 1986 to 2007. All of these homicides occurred in a very small geographical area, the victims were all females at the margin of society, and many were left to die in or around an abandoned building.

6. Based on the DNA, Mr. Ott was finally able to prove his innocence and secure his release from prison. This lawsuit seeks redress for his injuries and for Defendants' misconduct.

## Jurisdiction and Venue

7. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to this complaint occurred in this judicial district.

## The Parties

9. Plaintiff is a 35 year-old resident of Oak Creek, Wisconsin. Mr. Ott was born and raised in Milwaukee, Wisconsin.

10. Prior to his arrest, Mr. Ott was living with his mother and working at a nearby store. Since his release from prison in January 2009, Plaintiff has enrolled in Milwaukee Area Technical College where he is pursuing an Associate's Degree in Human Services.

11. Defendants Arthur L. Jones, Nanette H. Hegarty, Carl Buschmann, James DeValkenaere, Robert Simon, Eric Moore, Ricky Burems, Michael Valuch, Percy Moore and Michael Dubis, are current or former police officers with the City of Milwaukee Police Department. Each of the Defendant Officers is sued in his individual capacity, and each acted under color of law and in the scope of his employment in engaging in the actions alleged in this Complaint.

3

12. Defendant City of Milwaukee is a municipal entity that employs or employed the Defendant Officers, including the as-of-yet unknown Defendants.

**Background Allegations**

13. On August 26, 1995, 16 year-old Jessica Payne and 13 year-old Rebecca Morrison were arrested by the South Milwaukee Police Department for fighting with another girl. Fearing the consequences of their arrest, Ms. Payne and Ms. Morrison ran away from home.

14. The two girls, both Caucasian, decided to go to North Milwaukee. Upon arriving in North Milwaukee, they ended up at some point at a house at which prostitution and drug-sale activities were present.

15. At some point in that same night, Ms. Morrison and Ms. Payne got into a yellow Cadillac with four black men: Terrance Wallace, Johnnie Jones, Delon Russell, and Deshay Cox. When the six of them arrived at a friend's house, Ms. Morrison agreed to go into the home, where she had sex with several of the men.

16. Ms. Payne, however, wanted to go home. According to Mr. Wallace, he dropped Ms. Payne off at the corner of 17th Street and Center Street. Her subsequent whereabouts, movements and interactions until she was killed by Mr. Ellis are unknown.

## The Murder

17. On August 30, 1995, the body of Jessica Payne was discovered under a mattress behind an abandoned house. Her throat was slashed, her t-shirt was partially pushed up, and she was nude from the waist down.

18. The Medical Examiner determined that Ms. Payne may have been sexually assaulted before she died. As a result, a rape kit was collected.

## The Police Investigation and Defendants' Misconduct

19. One month after Ms. Payne's body was found, an inmate at the Milwaukee County Jail reportedly told authorities that a man named Richard Gwin was involved in the murder of a young white woman.

20. Thereafter, the Defendant Officers arrested Mr. Gwin. During this subsequent interrogation, the Defendant Officers coerced Mr. Gwin to identify someone they could arrest for the crime. As a result of improper and undue pressure by the Defendant Officers, Mr. Gwin gave a statement falsely implicating himself and two others - Sam Hadaway and Plaintiff - in Ms. Payne's murder.

21. That coerced statement was absolutely false. In truth, none of Mr. Gwin, Mr. Hadaway or Plaintiff had anything to do with the Payne murder. Mr. Gwin would not have given the

5

statement but for misconduct during the interrogation by the Defendant Officers.

22. The Defendant Officers then proceeded to coerce Sam Hadaway into repeating Mr. Gwin's false statement implicating Mr. Ott, which they accomplished by feeding Mr. Hadaway the details of the statement and improperly pressuring him.

23. Mr. Hadaway, who suffers from Cerebral Palsy and what he describes as "brain damage," could not withstand the threats and abuse by the Defendant Officers. As a result, he too falsely implicated Mr. Ott in a crime that Mr. Ott did not commit.

24. None of the circumstances surrounding Mr. Gwin's or Mr. Hadaway's coerced confessions were ever disclosed to Mr. Ott prior to his criminal trial.

25. Once the Defendant Officers had secured the false inculpatory statements from Mr. Gwin and Mr. Hadaway, the police ignored all the substantial evidence suggesting that someone else had committed the crime.

26. For example, there was a witness who saw Ms. Payne with a different black male -- not Mr. Ott -- in North Milwaukee just before Ms. Payne was killed; there was the madam of the house to which Ms. Payne and Ms. Morrison ran away who confessed to others that she had Ms. Payne killed; and there were the four men who were admittedly the last to see Ms. Payne alive.

27. Rather than continue to perform the police work necessary to properly solve the crime, the Defendants instead conspired among themselves and with others to shortcut the process. Specifically, the Defendant Officers unjustly singled out the Plaintiff, and then endeavored to stretch and manipulate the facts and evidence to fit the false hypothesis that he was guilty of the crime.

28. In that regard, the Defendants manufactured "evidence" that falsely implicated Plaintiff and withheld from prosecutors and Plaintiff evidence that was both exculpatory and material. This unconstitutional conduct included, but was not limited to, manipulating Mr. Gwin and Mr. Hadaway into falsely implicating Plaintiff and withholding the coercive circumstances surrounding those statements, and withholding information regarding the other similar murders that were committed in the area.

29. The Defendants also disregarded and/or destroyed exculpatory evidence that should have been preserved. The Defendant Officers further deliberately and affirmatively failed to investigate and develop information that would have helped to establish the guilt of an individual other than Plaintiff. Consistent with that endeavor, Defendants unlawfully suppressed information that would have implicated others and thereby exonerate Plaintiff.

## The Malicious Prosecution

30. In February of 1996, Plaintiff stood trial for the murder of Jessica Payne.

31. The only evidence against Mr. Ott at trial was the coerced testimony of Mr. Gwin and Mr. Hadaway. On that basis, Mr. Ott was wrongfully convicted of the homicide of Jessica Payne.

32. Mr. Ott was sentenced to life in prison. His post-trial motions and appeals were denied.

## Plaintiff's Exoneration

33. Throughout his incarceration, Mr. Ott maintained his innocence and sought assistance to help prove it.

34. In 2002, with the help of the lawyers at the Wisconsin Innocence Project, Mr. Ott successfully petitioned the State to undertake additional DNA testing of the forensic material that was collected in Mr. Ott's case. The State was able generate a DNA profile from the semen on the vaginal swabs taken from Ms. Payne; that profile did not match Mr. Ott, Mr. Gwin, Mr. Hadaway or any of the four men with whom Ms. Payne interacted in the yellow Cadillac.

35. On information and belief, about one year later, or on or about May 19, 2003 at the latest, the Wisconsin State Police Crime Laboratory ran the male DNA profile generated in Ms. Payne's murder through the Casework and Convicted Offender

Indices of the Wisconsin Databank. In doing so, the State Police established that the DNA profile from Ms. Payne's murder matched a DNA profile from the murder of Joyce Mims. Ms. Mims had been found dead on or about June 20, 1997, and her body, like Ms. Payne's, was left in an abandoned building just a few blocks away from where Ms. Payne's body was found.

36. Although the Defendants were informed of the match between the DNA profile in Ms. Payne's and Ms. Mims' murder not later than 2003, this exculpatory information was not disclosed to Mr. Ott, who remained convicted and imprisoned for the Payne murder, for another four years. The Defendants failure to disclose this information occurred despite Mr. Ott's express request for any such information, and the Defendants ongoing obligation to disclose the same.

37. No later than June 13, 2007, the State police discovered that the DNA profile generated from the forensic evidence in the murder of Ouithreaun Stokes also matched the profile developed in the Payne and Mims cases. Ms. Stokes had been found dead in an abandoned building in April of 2007, just a few houses away from where Ms. Payne's body was found.

38. After Mr. Ott finally learned of these two matches, he promptly moved for a new trial. Although that motion was initially denied, the appellate court found that "it is difficult to imagine more . . . distinct evidence than a single

9

DNA profile found on all three victims . . . This new evidence suggests that someone other than Ott may have killed Payne." As a result, the Court reversed Mr. Ott's conviction and remanded the case for a new trial.

39. Mr. Ott was released on bail on January 8, 2009.

### The North Side Strangler

40. Since Mr. Ott's release in January, the police announced that they linked Walter E. Ellis' DNA profile to the DNA profile from the Payne, Mims and Stokes murders.

41. On information and belief, the police matched Mr. Ellis' DNA to the profile generated from six other murders of women in the neighborhood, all of which occurred before Ms. Payne was killed. On information and belief, these DNA matches include the following:

    a. In October 1986, Deborah Harris was strangled to death. Her body was found in a river on the North side.

    b. In October 1986, Tanya Miller was strangled to death. Her body was found between an abandoned house and a garage.

    c. In November 1992, Irene Smith was stabbed and strangled to death. Her body was found in an alley.

d. In October 1994, Carron D. Kilpatrick as stabbed and strangled to death. Her body was found in a garbage truck.

e. In April 1995, Florence McCormick was strangled to death. Her body was found in the basement of a vacant home.

f. In June 1995, Sheila Farrior was strangled to death. Her body was found in a bedroom inside a vacant home.

42. As a result of the volume, location and manner of his killings, the Defendants have dubbed Mr. Ellis the "North Side Strangler."

43. On or about September 6, 2009, police arrested Walter E. Ellis. He was later charged with the murders of Joyce Mims and Ouithreaun Stokes. The District Attorney's Office has indicated that additional charges may be brought against Mr. Ellis in the coming days.

44. Given this overwhelming evidence that a serial killer, and not Mr. Ott, was responsible for Ms. Payne's murder (and the murder of many other women), on June 5, 2009, the State dropped all charges against Mr. Ott.

## Plaintiff's Injuries

45. Plaintiff spent 13 years in prison for a crime that he did not commit. Plaintiff must now attempt to make a life for himself outside of prison without the benefit of over a decade of life experiences, which normally equip adults for that task.

46. Additionally, the emotional pain and suffering caused by losing 13 years in the prime of life has been substantial. During his wrongful incarceration, Plaintiff was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to share holidays, births, funerals and other life events with loved ones, the opportunity to fall in love and marry and to pursue a career, and the fundamental freedom to live one's life as an autonomous human being.

47. As a result of the foregoing, Plaintiff has suffered tremendous damage, including physical suffering, all proximately caused by Defendants' misconduct.

## Count I -- 42 U.S.C. § 1983

### Due Process

48. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

49. As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as

under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

50. In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution. Absent the totality of this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

51. The Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

52. Additionally, following Plaintiff's wrongful conviction, the Defendants continued to withhold exculpatory evidence, to wit, the 2003 match between the DNA found on Ms. Payne and on Ms. Mims. This misconduct directly resulted in the continued wrongful incarceration of Plaintiff, violating his rights under the United States Constitution.

53. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to, emotional distress more fully alleged above.

54. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

55. The misconduct described in this Count was undertaken by employees and agents of the City of Milwaukee, including but not limited to the Defendants, pursuant to the policy and practice of the Milwaukee Police Department to pursue wrongful convictions through profoundly flawed investigations and coerced confessions. In this way, the City of Milwaukee violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

56. These widespread practices, so well-settled as to constitute *de facto* policy in the Milwaukee Police Department, were able to exist and thrive because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

57. The widespread practices described in the preceding paragraphs were allowed to flourish because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

14
Case 2:09-cv-00870-RTR   Filed 09/10/09   Page 14 of 20   Document 1

## Count II -- 42 U.S.C. § 1983

### False Imprisonment

58. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

59. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, caused Plaintiff to be falsely imprisoned in violation of his constitutional rights.

60. As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

61. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

62. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Milwaukee Police Department in the manner described more fully above.

## Count III – 42 U.S.C. § 1983

### Failure to Intervene

63. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

64. In the manner described above, during the constitutional violations described above, one or more of the

Defendants stood by without intervening to prevent the misconduct.

65. As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

66. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

67. The misconduct described in this Count was undertaken pursuant to the City of Milwaukee's policy and practice in the manner described in the preceding paragraphs.

### Count IV -- 42 U.S.C. § 1983

#### Conspiracy to Deprive Constitutional Rights

68. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

69. After the murder at issue, the Defendants reached an agreement amongst themselves to frame Plaintiff for the crime, and to thereby deprive Plaintiff of his constitutional rights, all as described in the various Paragraphs of this Complaint.

70. Independently, before and after Plaintiff's conviction, each of the Defendants further conspired, and continue to conspire, to deprive Plaintiff of exculpatory

materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

71. In this manner, the Defendants, acting in concert with other unknown co-conspirators, including persons who are not members of the Milwaukee Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

72. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

73. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

74. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

75. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Milwaukee Police Department in the manner described more fully in preceding paragraphs, and was tacitly ratified by policymakers for the City of Milwaukee with final policymaking authority.

## Count V -- 42 U.S.C. § 1983

### Supervisor Liability

76. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

77. The constitutional injuries complained of herein were proximately caused by a pattern and practice of misconduct, which occurred with the knowledge and consent of those of the Defendant Officers who acted in a supervisory capacity, such that these officers personally knew about, facilitated, approved, and/or condoned this pattern and practice of misconduct, or least recklessly caused the alleged deprivation by their actions or by their deliberately indifferent failure to act.

78. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

79. The misconduct described in this Count was undertaken pursuant to the City's policy and practice in the manner more fully described above.

80. As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

## Count VI -- State Law Claim

### Indemnification

81. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

82. Wisconsin law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

83. The Defendant Officers are or were employees of the Milwaukee Police Department, and acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, CHAUNTE OTT, respectfully requests that this Court enter judgment in his favor and against the Defendants, CITY OF MILWAUKEE, FORMER CHIEF OF POLICE ARTHUR L. JONES, FORMER CHIEF OF POLICE NANETTE H. HEGARTY, DETECTIVE CARL BUSCHMANN, DETECTIVE JAMES DEVALKENAERE, DETECTIVE ROBERT SIMON, DETECTIVE ERIC MOORE, DETECTIVE RICKY BUREMS, DETECTIVE MICHAEL VALUCH, DETECTIVE PERCY MOORE, DETECTIVE MICHAEL DUBIS AND OTHER AS-OF-YET UNKNOWN EMPLOYEES OF THE CITY OF MILWAUKEE, and awarding compensatory damages, costs and attorneys' fees, along with punitive damages against each of the Defendant Officers in their individual capacities along with whatever additional relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff, CHAUNTE OTT, hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/

Jon Loevy
Gayle Horn
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
Ph: (312) 243-5900
Fx: (312) 243-5902