# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CHAUNTE OTT,

                Plaintiff,

    v.

                                        Case No. 09-C-870

CITY OF MILWAUKEE,
ARTHUR L. JONES,
NANNETTE H. HEGERTY,
CARL BUSCHMANN,
JAMES DEVALKENAERE,
ROBERT SIMON,
ERIC MOORE,
RICKY BUREMS,
PERCY MOORE,
MICHAEL DUBIS, and,
OTHER AS-OF-YET
UNKNOWN EMPLOYEES OF
THE CITY OF MILWAUKEE,

                Defendants,

## DECISION AND ORDER

This Decision and Order addresses the Defendants' motion to compel, and Plaintiff Chante Ott's ("Ott") expedited non-dispositive motion to compel and for partial withdrawal of that motion.[1]

---

[1] One additional motion to compel filed by Ott is pending. (ECF No. 153.) The motion, which is not fully briefed, will be addressed in a separate decision.

## Defendants' Motion to Compel

To provide context for the Defendants' motion to compel, the Court begins by summarizing the relevant allegations of the Complaint. This action pursuant to 42 U.S.C. § 1983 stems from the wrongful state conviction of Ott for the August 1995 murder of Jessica Payne ("Payne"), a 16-year-old runaway. (See Compl. ¶1-2, 7, 13.) (ECF No. 1.) The Defendants, the City of Milwaukee ("the City"), a number of individual City of Milwaukee Police Department (the "MPD") officers, and other unidentified City employees (collectively "the individual Defendants") are alleged to have coerced false statements from Richard Gwin ("Gwin") and Sam Hadaway ("Hadaway") implicating Ott for Payne's murder. (*Id*. at ¶¶ 20-25.) The only evidence at Ott's February 1996, trial was the testimony of Gwin and Hadaway. (*Id*. at ¶ 31.) Ott was convicted of Payne's murder and sentenced to life in prison. (*Id*. at ¶ 32.)

In 2002, attorneys at the Wisconsin Innocence Project assisted Ott in petitioning for and obtaining DNA testing of the forensic evidence from Ott's case. The DNA did not match that of Ott, Gwin, Hadaway or four men who were known to have contact with Payne before her death. (*Id*. at ¶ 34.) In 2003, the Defendants learned that the DNA profile from Payne's murder matched a DNA profile from the murder of another woman. However, they did not disclose the information to Ott. (*Id*. at ¶¶ 35-36.) He remained imprisoned for another four years. (*Id*. at ¶ 36.) Eventually, Ott moved for a new trial, his conviction was overturned, his case was remanded for a new trial, and Ott was released on bail on January 8, 2009. (*Id*.

2

at ¶ ¶ 38-39.) After Ott's release, the MPD announced that DNA evidence linked Walter E. Ellis ("Ellis"), with a number of murders, including Payne's. (*Id*. at ¶ 40.) The charges against Ott were dropped on June 5, 2009. (*Id*. at ¶ 44.)

In this context, citing Federal Rule of Civil Procedure 37(a)(3)(A) and (B), the Defendants request that Ott be compelled to disclose 30 documents totaling 187 pages claimed as the work-product of post-conviction counsel John Pray[2] of the Wisconsin Innocence Project, and his students (collectively "Pray"). (ECF No. 135.) These papers are listed on a privilege log. (Smokowicz Aff., Attach B.) (ECF No. 136-2.) The Defendants assert that Ott explicitly waived any attorney-client privilege between Ott and Pray and, therefore, production of Pray's work-product should be compelled.

In opposing the motion, Ott maintains that, although the Defendants seek the documents over which Pray has asserted the work-product privilege, they only identify two subjects—Hadaway and Latonia Cooper ("Cooper")—for which they assert waiver and need have been demonstrated. (ECF No. 139.) Ott states that only three documents listed in the log relate to Hadaway and Cooper, and as to the other 27 documents the Defendants have made no arguments and, therefore, they have waived any claim to those documents. Ott also maintains that, with respect to the three documents pertaining to Hadaway and Cooper the

---

[2]Pray, a University of Wisconsin Law School Clinical Professor, was a co-founder and co-director of the Innocence Project. In that capacity, Pray, assisted by students, represented Ott's interests in seeking post-conviction relief. (Smokowicz Aff. ¶ 5.)

3

privilege has not been waived, and the Defendants' contention that those documents are necessary to their defense is without merit.

The Defendants replied to Ott's arguments, and also assert that the issue should be considered under Rule 502 of the Federal Rules of Evidence and that the Court should determine that the privilege has been waived, citing *Johnson Outdoors, Inc., v. Gen. Star Indem. Co.,* No. 05-C-0522, 2011 WL 196825 (E.D. Wis. Jan. 19, 2011). (ECF No. 140.)

A party may seek an order to compel responses to discovery requests in the event that the opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(3). Rule 26(b)(1) of the Federal Rules of Civil Procedure allows parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. *See Appleton Papers, Inc. v. E.P.A.,* 702 F.3d 1018, 1023 (7th Cir. 2012). However, the work-product doctrine, established in *Hickman v. Taylor*, 329 U.S. 495 (1947), now codified in part in Rule 26(b)(3), provides qualified protection for materials prepared by or at the request of counsel in anticipation of litigation or for trial.

Both "distinct from and broader than the attorney-client privilege," *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975), the work-product doctrine permits discovery of "documents and tangible things" prepared by or for counsel in anticipation of civil litigation if "they are otherwise discoverable under Rule 26(b)(1), and . . . if the party shows it has substantial need for the materials . . . and cannot, without undue hardship, obtain their substantial equivalent by other means," Fed. R. Civ. P. 26(b)(3). Regardless, the Rule also

4

states "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). *See also, Appleton Papers*, 702 F.3d at 1023-24.

"[T]he work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 621-22 (7th Cir. 2010) (citing *Hickman*, 329 U.S. at 495). Disclosure of witness interviews and related documents, however, is particularly discouraged. *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 398-99 (1981) ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes.")).

The Defendants do not challenge Ott's assertion that the 30 documents listed on Ott's privilege log qualify as work-product. Therefore, the Court's analysis begins with the waiver issue. The Defendants' initial work-product doctrine waiver contention, based on Ott's waiver of the attorney-client privilege, relies on *Brown v. Trigg,* 791 F.2d 598, 601 (7th Cir. 1986). *Brown* relied on *Noble*s, 422 U.S. at 225.

*Brown*, a habeas corpus case, rejected the contention that the trial court had improperly admitted the testimony of a polygraph examiner, hired by defendant Delores

5

Brown's attorney to administer a polygraph in conjunction with the juvenile waiver hearing. 791 F.2d at 601. The testimony of the examiner was part of the state's case-in-chief. *Id*. The court held that, as an agent of Brown's attorney, the examiner was protected by the attorney-client privilege; however, by presenting the examiner's testimony at the juvenile hearing, the defendant and the attorney had waived the privilege and work-product protection. *Id*. The Supreme Court's decision in *Nobles,* arose out of similar facts, involving testimony of an investigator hired by the defendant's attorney to speak to witnesses to an armed bank robbery with which Nobles had been charged. 422 U.S. at 227-28. The investigator's report and testimony was used at trial to impeach some of those witnesses. *Id*. The Supreme Court found that the defendant had waived the work-product protection. *Id.* at 237-40.

While Ott contends that no waiver has occurred because Pray has not and may not testify at trial, he cites no cases to support that contention. *Nobles* involved a waiver in the course of trial. However, *Brown* involved a waiver arising during a juvenile court proceeding to determine whether the suspect would be tried as a juvenile or waived into adult court. Additionally, the Court's research has disclosed a number of district court decisions within this appellate circuit addressing waivers of the work-product protections in the context of depositions. *See Eli Lilly and Co. v. Zenith Goldline Pharm., Inc.,* 149 F. Supp. 2d 659, 664 (S.D. Ind. 2001); *Avery Dennison Co. v. UCB FILMS PLC,* No. 95 C 6351, 1998 WL 703647, at *5 (N.D. Ill. Sept. 30, 1998); *Omega Elec., S.A. v. Stewart-Warner Corp.,* No. 86 C 8186, 1988 WL 139236, at *1 (N.D. Ill. Dec. 20, 1988); *Barr v. Safeco Ins. Co.,* No. 83 C 2711,

6

1987 WL 7466, at *1 (N.D. Ill. Mar. 3, 1987). Nonetheless, both *Brown* and *Noble* predate the 2008 enactment of Rule 502, which addresses the waiver issue.

The Defendants also argue that naming Pray as a potential witness and disclosing the majority of his file waives the work-product privilege. Such contention does take into account the differences between the two privileges and the interests they reflect. *See Appleton Papers Inc.*, 702 F.3d at 1024-25. The principle of waiver applies more broadly to disclosure of materials protected by the attorney-client privilege than to work-product protection. *Id.* at 1024. Generally, disclosure of a conversation protected by the attorney-client privilege waives the privilege as to the portion disclosed and all other communications relating to the subject matter. *Id.* However, disclosure of some documents does not necessarily destroy the work-product protection for documents of the same or similar character. *Id.* "Undisclosed work product remains protected." *Id.* Thus, the Defendants' blanket waiver argument is not persuasive. *Johnson Outdoors, Inc.*, 2011 WL 196825, at * 1, also involved a waiver of attorney-client privilege, not waiver of work-product protection, based on disclosure of materials of the same subject matter and for that reason is distinguishable from this case.

Rule 502(a) provides that a disclosure that waives the attorney-client privilege or work-product protection extends the waiver to undisclosed communications only if:

> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

7

The information before the Court indicates that the waiver of the attorney-client privilege was intentional. However, Pray's deposition testimony only mentioned that he spoke to Hadaway; Pray did not disclose the substance of their conversation. (Smokowicz Aff. ¶ 14, Attach. C, 37.) Thus, Ott did not waive work-product protections as to Hadaway. *See Appleton Papers Inc.,* 702 F.3d at 1025 (holding that the government did not "expose the enchanted nature of the information" sought).

In contrast, during Pray's deposition, he addressed what he recalled of his interviews with Latonia Cooper. (*Id.* at 37-39.) As to Cooper, Ott has waived the work-product protections as to the facts relating to Pray's conversations with Cooper. *See Appleton Papers Inc.*, 702 F.3d at 1025 (holding "there is no doubt that the government waived work product immunity for the portions of the documents it did use in the two consent decrees").

The next question is whether, in fairness, the undisclosed papers must be considered together with the previously disclosed information. Absent review of the papers memorializing Pray's conversion with Cooper, the Court cannot make that determination. The Court will require Ott submit for *in camera* inspection the notes that Pray took after interviewing Cooper, any typed versions of those notes, or any notes taken by students who were present at the interview. Any of those documents that the Court deems should be disclosed must be "protect[ed] against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Ott may also file a proposed redaction of those papers

8

to exclude information relating to Pray's mental processes, together with a brief explanation of the proposed redaction. Following the Court's review, it will determine the extent, if any, of additional disclosure required.

With respect to Rule 26(b)(3)(A), the Defendants also contend that they have a substantial need for the materials to prepare their case and cannot, without undue hardship, obtain the substantial equivalent by other means. In that regard, the Defendants maintain that Pray, or others he supervised, interviewed one witness (Hadaway)[3] in 2008 who subsequent to Ott's trial recanted his allegations against Ott, and another witness (Cooper) who now claims that she told police of another possible suspect, Ellis. According to the Defendants, Pray denies having been told this in his conversation with Cooper. (Defs.' Mem. Mot. Compel, 3.) The Defendants state that the evidence is "obviously quite significant" and they have "absolutely" no other way of obtaining it.

Cooper has already been addressed. The Court simply notes that the Defendants have mischaracterized Pray's testimony—he testified that he could not recall one way or another whether Cooper told him about another suspect, because Ellis' name would not have had any meaning at that time. (*See* Smokowicz Aff., Attach. C.)

With respect to Hadaway, Ott responds that the factual content of Hadaway's statement is contained in Hadaway's affidavit which has been disclosed to the Defendants and was available for examination during Pray and Hadaway's deposition. Ott also states, with

---

[3] The names of the witnesses are not stated in the Defendants' motion. The Court has referred to the Smokowicz affidavit to identify them by name.

9

supporting documents, that the MPD spoke to Hadaway during 2007, 2008, and 2009, and that in 2008 and 2009, the MPD spoke to Hadaway regarding his recantation of his trial testimony and his conversations with Pray.

Review of the MPD police report regarding the 2008 and 2009 interview of Hadaway weakens the Defendants' conclusory claim of a substantial need for the information from Pray's interview of Hadaway. The Defendants should have similar information from the same time frame. Therefore, they have not shown substantial need for the documents relating to Hadaway. Furthermore, as to those remaining materials which are not specifically addressed by their motion, they have not shown substantial need.

In sum, the Defendants' motion to compel is granted to the extent that the Court will conduct an *in camera* review of the Cooper interview documents and denied in all other respects. Ott must provide the Cooper documents, proposed redactions, and a brief explanatory information no later than the stated deadline.

**Ott's Discovery-Related Motions**

Also pending are Ott's March 6, 2013, Civil Local Rule 7(h) motions to compel the deposition of Defendant Ricky Burems ("Burems"), and for partial withdrawal of that motion as to Burems' deposition. (ECF Nos. 148 & 150.) The motion for partial withdrawal, based upon an email from counsel for the Defendants confirming Burems' availability for the deposition, is granted.

10

The remaining portion of Ott's motion to compel seeks an award of attorney fees for preparation of the motion, and the costs of obtaining an expedited copy of Burems transcripts. The Defendants oppose the motion suggesting, in essence, that they did not violate any provision of Rule 37 warranting an award of sanctions, that circumstances make any such award unjust, and that the Defendants should not be required to pay for an expedited transcript because Ott has not established the need for such a transcript.

In seeking sanctions, Ott relies on Rule 37 of the Federal Rules of Civil Procedure. However, Rule 37 sanctions are limited to circumstances in which a party has violated a court order such as a discovery ruling. Fed. R. Civ. P. 37(b)(2); *Brandt v. Vulcan, Inc.,* 30 F.3d 752, 756 (7th Cir. 1994). In this instance, there was no order in place regarding Burems' deposition. Additionally, even if sanctions were permissible, Ott has not presented any reason that might establish the need for an expedited transcript of the Burems deposition. Accordingly, the remaining portion of Ott's motion for sanctions is denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Defendants' motion to compel (ECF No. 135) is **GRANTED** to the extent that no later than April 25, 2013, Ott must produce for *in camera* inspection notes that Pray took after interviewing Cooper, any typed versions of those notes, and any notes taken by students who may have been present with Pray at the interview, and **DENIED** in all other respects;

11

Ott's motion to withdraw the portion of his motion to compel with respect to Burems' deposition (ECF No. 150) is **GRANTED**; and,

Ott's motion to compel with respect to Rule 37 sanctions (ECF No. 148) is **DENIED**.

Dated at Milwaukee, Wisconsin this 17th day of April, 2013.

BY THE COURT

_____
**Hon. Rudolph T. Randa**
**U.S. District Judge**