## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**AHMAD FARID KHORRAMI,**

        Plaintiff,

       **-vs-**                 **Case No. 07-C-812**

**DALE MUELLER,**

        Defendant.

---

## DECISION AND ORDER

---

In September of 2001, Dr. Ahmad Farid Khorrami, an alien on "advance parole," was employed by Skyway Airlines in Milwaukee, training to be an airline pilot. The FBI detained Dr. Khorrami soon after the 9/11 terrorist attacks. Khorrami alleges that on September 21, 2001, now-retired FBI Agent Dale Mueller violated his substantive due process rights by pushing him to the ground and kicking him multiple times during a custodial interrogation. August 12, 2013 Order Denying Mueller's Motion for Summary Judgment, ECF No. 151, at 1-2; 2013 WL 4087559, at *1. Khorrami's detention then continued for just under three months. After he was released, Khorrami suffered a heart attack which he claims was caused by post-traumatic stress disorder arising from Mueller's attack. *Id.* The parties filed several motions in limine in advance of the January 27 jury trial. These motions are addressed herein.

- **Mueller's motion to exclude references to actual or alleged prior bad acts** [ECF No. 172]

Mueller moves to exclude evidence that he physically intimidated Jeffrey Whitman, a murder/rape suspect, during an interrogation on August 4, 1988. Mueller also moves to exclude evidence that he assaulted Norbert Ellis, a murder/rape suspect, during an interrogation on December 18, 1997.

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Fed. R. Evid. 404(b)(1). However, prior bad acts can be admitted for other purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Accordingly, prior acts are admissible if the evidence is relevant to a matter at issue other than the propensity to commit the act complained of; if the prior act is similar enough and close enough in time to be relevant to the matter in issue; if the evidence is sufficient to support a jury finding that the defendant committed the similar act; and if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *United States v. Asher*, 178 F.3d 486, 492 (7th Cir. 1999).

Khorrami's prior acts evidence is probative of Mueller's intent, which is a relevant factor in the substantive due process analysis. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the

conscience-shocking level"). *See, e.g., Young v. Rabideau*, 821 F.2d 373, 379 (7th Cir. 1987) (a "record of loss of temper and consequential intentional hostility toward others on earlier occasions tended to show that a similar intent to do harm was present in his conduct toward this defendant"). Moreover, the prior acts are similar to the conduct alleged here. In both instances, Mueller was using intimidation in an effort to coerce a confession. With respect to Ellis, Mueller resorted to physical violence when Ellis was uncooperative with Mueller's investigation. Mueller testified at a suppression hearing that he "grabbed" Ellis, "shook him to, you know, make him tell the truth," "grabbed him by the neck with both hands," and Ellis' head "hit up against the wall and bounced off the wall." This is similar to what Mueller allegedly did to Khorrami: frustrated with his inability to extract a confession from Khorrami, Mueller pushed Khorrami to the ground and assaulted him.

The Whitman incident is perhaps less similar, but it is similar enough. *See United States v. Long*, 86 F.3d 81, 84 (7th Cir. 1996) ("Simple differences in the type of conduct or charge at issue cannot defeat the similarity requirement. . . . [The] analysis need not be unduly rigid. . . . The prior acts need not be duplicates of the one for which the defendant is now being tried"). Whitman accused Mueller of using his physical presence and anger to intimidate Whitman, and Whitman's statements were later excluded as involuntary. Thus, the inference is that Mueller intended to harm Whitman if Whitman didn't provide Mueller with the desired information. Similarly, Khorrami may have avoided an assault if he had confessed.

- 3 -

Both incidents are close enough in time to be relevant to the issue of Mueller's intent. The Ellis assault occurred only four years before Khorrami's interrogation, and the incidents are strikingly similar. *See, e.g., United States v. Hurn*, 496 F.3d 784, 788 (7th Cir. 2007) ("We have held that a district court does not abuse its discretion by admitting thirteen-year-old evidence of prior bad acts where the prior conduct is very similar to the conduct charged"). The Whitman incident is older and perhaps not as similar as the Ellis incident, but it is similar enough to compensate for the longer gap in time. *See United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005) ("temporal proximity of the prior acts to the current charge is not alone determinative of admissibility").

The third factor — whether the evidence is sufficient to support a jury finding that the defendant committed the similar act — is easily satisfied. Mueller admitted, under oath, that he assaulted Ellis, and Whitman's confession was suppressed on the basis of Mueller's conduct. *See, e.g., Petrovic v. City of Chi.*, No. 06 C 6111, 2008 WL 818309, at *3 (N.D. Ill. Mar. 21, 2008) (noting that a complaint against a police officer that was sustained by the police department's Office of Professional Standards is "sufficient to support a jury finding that [the police officer] committed the alleged act").

Finally, the danger of unfair prejudice, if any, can be alleviated by an appropriate limiting instruction. The parties should work towards an agreed upon instruction for the Court's consideration when it takes up the issue of jury instructions

during trial. Nor will the admission of this evidence result in the trial being needlessly sidetracked. Evidence of Mueller's prior acts can be introduced when Mueller takes the stand at trial. Accordingly, the probative value of Khorrami's Rule 404(b) evidence is not substantially outweighed by the danger of unfair prejudice or any of the other factors listed in Federal Rule of Evidence 403 (e.g., confusing the issues, misleading the jury, undue delay, wasting time).

Aside from incidents involving Whitman and Ellis, Mueller also moves to exclude evidence of general allegations of physical intimidation during interrogations. Khorrami didn't respond to this aspect of Mueller's motion. In a footnote, Khorrami mentions that Mueller has "been accused of numerous other acts of physical intimidation, both at the FBI and in his current private security job," but in the remainder of the footnote, Khorrami essentially concedes that he lacks evidence sufficient to support a jury finding that Mueller committed any similar acts other than the incidents already discussed. Therefore, Khorrami's 404(b) evidence must be limited to the specific incidents ruled admissible herein.

- **Mueller's motion to exclude references to alleged misconduct by others, purported misconduct by Mueller unrelated to "kicking," and other irrelevant matters** [ECF No. 174]

As the Court explained in its Order denying Mueller's motion for summary judgment, "[w]hat remains of this lawsuit is Dr. Khorrami's claim that . . . Mueller pushed him to the ground and kicked him multiple times during a custodial interrogation regarding the 9/11 attacks." 2013 WL 4087559, at *1. Accordingly,

- 5 -

Mueller argues that Khorrami cannot present evidence regarding events other than the alleged kicking, including, for instance, evidence regarding Khorrami's immigration status and subsequent three-month detention.

The Court will not catalogue all of the evidence that Mueller seeks to exclude because Mueller's motion is based on the erroneous premise that Khorrami's immigration status, interrogation, detention, and the circumstances which led to that detention are not relevant to Khorrami's claim. Khorrami wasn't detained for shoplifting, or even for murder. He was falsely accused of participating in the deadliest and most notorious terrorist attack in American history. Then, after Mueller allegedly attempted to beat a confession out of him, Khorrami was detained for almost three more months, forced to live in constant fear of another assault. Context matters. *See, e.g., Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012) ("One measure of relevance is whether its exclusion would leave a chronological and conceptual void in the story") (quoting *United States v. Boros*, 668 F.3d 901, 908 (7th Cir. 2012)).

Ultimately, the evidence at issue is relevant to the extent of Khorrami's injuries (e.g., the length of detention and the reason he was detained). It is also probative of Mueller's state of mind and intent (e.g., the lack of evidence linking Khorrami to the 9/11 attacks, Khorrami's immigration status). The probative value of this evidence is not outweighed by the danger of unfair prejudice. "It is not sufficient to find that the evidence is simply prejudicial because . . . all probative evidence is prejudicial to the party against whom it is offered. Rather, the relevant inquiry is whether there was

- 6 -

*unfair* prejudice . . ." *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) (emphasis in original). The jury will be instructed only on the assault, and Mueller's counsel is free to explain that Khorrami's detention is relevant only as it pertains to damages.

- **Mueller's motion to exclude unidentified evidence of past medical expenses, future medical expenses, lost wages, lost future earnings, and diminished earning capacity** [ECF No. 176]

Litigants are required to initially disclose "a computation of each category of damages claimed by the disclosing party — who must also make available . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. 26(a)(1)(A)(iii). These initial disclosures must be supplemented during the course of discovery. Fed. R. Civ. P. 26(e). A party who fails to follow these rules "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). *See also Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011).

Initially and during the course of discovery, Khorrami claimed entitlement to six types of damages: (1) past medical expenses, equal to the sum total of Khorrami's medical bills; (2) future medical expenses, equal to the medical bills Khorrami will continue to incur because of his near-fatal heart attack; (3) lost wages, equal to the wages Khorrami would have received as an airline pilot to date, had he not suffered

- 7 -

from a near-fatal heart attack that rendered him unemployable as an airline pilot; (4) lost future earnings, equal to additional earnings Khorrami would have continued to receive if he were employed as an airline pilot until the mandatory retirement age of 65; (5) physical and emotional pain and suffering; and (6) punitive damages. Mueller's motion is directed towards the first four categories. Mueller's motion also refers to diminished earnings capacity, but it appears to the Court that this concept is encompassed by Khorrami's claim for lost future earnings.

The Court agrees with Khorrami that he made the proper disclosures at the proper times during discovery, and any supposed error in the course of discovery was harmless in any event. Mueller's primary objection is to the lack of a formal and specific computation of damages, but the absence of an actual computation has been held harmless where the method of computation is straightforward and obvious. *See, e.g., Compak Co., LLC v. Johnson*, No. 03 C 7427, 2011 WL 1654269, at *17 (N.D. Ill. Apr. 28, 2011) (a detailed damages computation may not be necessary when the defendant is able to make the computation itself) (citing *Robinson v. Champaign Unit 4 Sch. Dist.*, 412 Fed. App'x 873, 878 (7th Cir. 2011)). For example, it may be an annoyance, but Mueller can use a calculator to add Khorrami's medical bills, all of which are in his possession. More than that, the Court does not perceive that any of Khorrami's categories are so complex that Mueller is prejudiced by Khorrami's disclosures, or lack thereof. *See, e.g., Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (damages computation is especially necessary when plaintiff seeks

complex damages such as lost profits). Obviously, there is some speculation and projection involved in computing future earnings and medical bills, but these are the proper subjects for cross-examination at trial.

- **Mueller's motion to exclude witnesses that Khorrami failed to timely disclose** [ECF No. 177]

Mueller moves to exclude testimony by Thomas Kneir and Terry Feiertag on the grounds that Khorrami failed to identify them as potential witnesses in his initial disclosures or supplementations thereto. However, the supplementation requirement does not apply to witnesses who were "otherwise made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). This exception applies to both of these witnesses.

Mr. Kneir is a former FBI agent who was the Agent in Charge of the FBI's Jacksonville, Florida office when Khorrami was interrogated by Mueller. Shortly after the interrogation, Kneir became the Agent in Charge of the FBI's Chicago office. In his initial complaint, Khorammi alleged that the INS submitted a letter from Mr. Kneir to the Immigration Court during Khorrami's prolonged detention which corrected a false statement made in a previous filing alleging that Khorrami was connected to one of the 9/11 hijackers. Khorrami was released two days after this letter was submitted. At Mueller's deposition in 2009, Khorrami's counsel questioned Mueller regarding Kneir and his letter to the Immigration Court. *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N.D. Ind. 1998) ("Incidental discovery, particularly during a deposition,

of information ordinarily subject to supplementation satisfies the Rule 26(e)(1) duty as sufficiently as a formal filing"). Shortly thereafter, Mueller and Kneir were named as co-defendants in Khorrami's Second Amended Complaint in a related suit in the Northern District of Illinois.

Mr. Feiertag was Khorrami's immigration attorney during his immigration bond and removal proceedings. He is listed as Khorrami's counsel of record on the Decision of the Immigration Judge attached as Exhibit B to Mueller's motion to dismiss, filed in February of 2008. ECF No. 18-3.

Despite all of this information, Mueller argues that he wasn't on notice because neither individual can offer information that is relevant to Khorrami's claims. The Court has already rejected this argument by denying Mueller's motion to exclude "other irrelevant matters." ECF No. 174.

Even if the "otherwise made known" exception did not apply, the failure to disclose these witnesses, just like the purported failure to disclose a computation of damages, was harmless. Fed. R. Civ. P. 37(c)(1). Mueller has known about these witnesses for years, and the argument that their testimony would be irrelevant is of no avail.

- **Mueller's motion to exclude references to potential indemnification and references to Mueller's counsel or Mueller as "the government"** [ECF No. 178]; **Khorrami's motion to allow, if Mueller asserts an inability to pay defense, rebuttal that the Department of Justice will likely indemnify Mueller from any damages award** [ECF No. 187]

The parties agree that they will not describe Mueller or his counsel as "the

government," "the United States," "DOJ," "FBI," or similar terms. ECF No. 190.

Regarding indemnification, the Seventh Circuit has recognized the "inappropriateness of allowing the defendant to plead poverty if he will be indemnified," and that such evidence, if introduced, "opens the door" to the presentation of indemnification evidence. *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998). Mueller argues that he should be allowed to explain to the jury that this is a *Bivens* suit formally seeking relief against him in his personal capacity. However, the obvious implication of such an argument is that Mueller's personal assets are somehow in danger. Mueller cannot simultaneously hide indemnification from the jury while claiming that his own assets are at stake. Mueller argues that he would open the door only by arguing an inability to pay, but obviously, Mueller wants the jury to *think* that he will be unable to pay, or at least that personally satisfying the judgment would be a hardship. That is enough to open the door to indemnification evidence. Nor does it matter that Mueller does not have an absolute right to indemnification. If necessary, the likelihood of indemnification would become an issue of fact for the jury to resolve. If Mueller wants to appeal to the jury's sympathy in this manner, he will have to live with the consequences.

- **Mueller's motion to exclude Khorrami's statements to Dr. Vogelmann regarding his alleged assault and hematuria** [ECF No. 179]

Mueller argues that certain statements made by Khorrami to his primary care physician, Dr. Vogelman, are inadmissible hearsay. Khorrami intends to introduce Dr.

- 11 -

Vogelmann's treatment notes and read her deposition testimony into the record. The notes indicate that Khorrami told Dr. Vogelmann that he was "kicked in [the] back" while in detention and that he experienced "hematuria," or blood in his urine, for "sev[eral] days but was "now okay." Similarly, Dr. Vogelmann testified at her deposition as follows: "He came in for a cough that he had since before December 14th. Um, he told me about the ear infection. Besides the cough, he was short of breath with his breathing. He told me he had been interrogated for 88 days, which was related to 9/11. He told me he was kicked in his back and he had blood in his urine for several days, but now he's okay."

Federal Rule of Evidence 803(4) exempts from the hearsay rule a statement that "is made for — and is reasonably pertinent to — medical diagnosis or treatment" and "describes medical history; past or present symptoms or sensations; their inception; or their general cause." The rationale behind this exception is that "a patient's self-interest in promoting the cure of his own medical ailments guarantees the reliability of statements the patient makes for purposes of diagnosis or treatment." *Gong v. Hirsch*, 913 F.2d 1269, 1273 (7th Cir. 1990). The test for admissibility is whether the statements "are of the type reasonably pertinent to a physician in providing treatment." *Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir. 1986); *see also United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985) (describing a two-part test for admissibility under Rule 803(4): "first, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statements

- 12 -

Case 2:09-cv-00878-RTR Filed 02/09/15 Page 12 of 44 Document 187-1
Case 2:07-cv-00812-RTR Filed 02/06/14 Page 12 of 44 Document 218-1

must be such as is reasonably relied on by a physician in treatment or diagnosis").

Mueller argues that this exception is inapplicable because Khorrami's statements regarding his hematuria aren't related to the initial reason for his visit (cough and congestion), but a visit to a primary care physician can obviously cover a range of health topics. Khorrami had just been released from prison, so it isn't at all surprising that he sought treatment for something that happened to him months earlier during a long period of incarceration, even if the visit was prompted by an acute condition. Rule 803(4) plainly applies here.

- **Khorrami's motion to bar all reference to, or evidence of, Khorrami's prior arrests or alleged bad acts** [ECF No. 180]

    The parties agree that neither party will make reference to or introduce any evidence of Khorrami's prior arrests or the acts that allegedly precipitated those arrests unless the other party opens the door to such testimony. The parties further agree to the redaction of any introduced exhibits to exclude reference to Khorrami's arrests and not to refer to the redacted information, unless the other party opens the door to such a reference. ECF No. 189.

- **Khorrami's motion to exclude reference to the ACLU** [ECF No. 181]

    The parties agree that neither party will make reference to the ACLU at trial. ECF No. 190.

- **Khorrami's motion to exclude argument that he was not lawfully present in the United States** [ECF No. 182]

    Mueller agrees that any argument that Khorrami was not lawfully present in

- 13 -

the United States when the events giving rise to this lawsuit occurred would be irrelevant and create a risk of unfair prejudice. In response, Mueller re-states his opposition to the introduction of *any* evidence regarding Khorrami's immigration status, but the Court has already ruled that such evidence is admissible to provide the necessary context to Khorrami's claims. Put simply, the Court agrees that the jury needs to know why Khorrami was in immigration detention when Mueller came to interrogate him.

- **Khorrami's motion to exclude Mueller's expert reports and** *curriculum vitae* [ECF No. 183]

The parties agree that neither party will introduce as evidence the report or *curriculum vitae* of an expert who testifies at trial, except for the purpose of impeachment. ECF No. 191.

- **Khorrami's motion to exclude evidence regarding his employment lawsuit** [ECF No. 184]

Khorrami moves to preclude Mueller from referring to or introducing evidence pertaining to his employment discrimination lawsuit against, and settlement with, Skyway Airlines. *Khorrami v. Skyway Airlines, Inc.*, Case No. 07-CV-503 (E.D. Wis.). Khorrami argues that this evidence should be excluded as irrelevant, and any actual relevance is outweighed by the danger of unfair prejudice or the possibility of misleading the jury under Federal Rule of Evidence 403. *See, e.g., Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 776 (7th Cir. 2001) (affirming a finding that the "probative value of evidence showing plaintiff's propensity to file possibly false

- 14 -

lawsuits . . . was outweighed by the danger of unfair prejudice inherent in a charge of litigiousness").

In response, Mueller argues that this evidence is relevant because it would allow the jury to weigh his alleged responsibility for Khorrami's damages against the culpability of Skyway. For example, Khorrami seeks $429,000.00 in lost wages on the basis that the alleged kicking interrupted his training and led to his alleged inability to find employment in the airline industry. In the Skyway litigation, Khorrami blamed his inability to work from late 2002 through 2005 and the ultimate loss of his job to misconduct and discrimination by Skyway.

As an initial matter, the Court agrees that the settlement should be excluded. Khorrami and Skyway could have settled for a variety of reasons wholly unrelated to Skyway's culpability. *United States v. Roti*, 484 F.3d 934, 936 (7th Cir. 2007) (noting that a settlement was irrelevant because it could have been reached "to avoid the cost and distraction of defending the suit"). More than that, evidence regarding the Skyway lawsuit is simply not relevant. The fact that Skyway's discriminatory conduct may have caused pain, suffering or lost wages does not undermine or conflict with Khorrami's claim that Mueller's assault caused the same or similar type of harm. Whatever relevance this evidence may have is far outweighed by the danger of unfair prejudice and juror confusion.

- **Khorrami's motion to exclude argument and evidence regarding collateral source payments for injuries caused by Mueller** [ECF No. 185]

- 15 -

Pursuant to the collateral source rule, Khorrami moves for an order barring Mueller from introducing evidence of health insurance payments made due to Khorrami's medical costs resulting from Mueller's assault, arguing that Khorrami's compensatory damages from medical costs are reduced by health insurance payments, and introducing evidence of or arguing that Khorrami's compensatory damages from loss of employment opportunity are reduced by unemployment benefit payments. Under the collateral source rule, "the defendant's liability shall not be reduced merely because Plaintiff's net damages are reduced by payments received from others." *Gill v. Maciejewski*, 546 F.3d 557, 564 (8th Cir. 2008). The collateral source rule applies in Section 1983 cases, *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986), so it should also apply to this *Bivens* action. *Arnett v. Webster*, 658 F.3d 742, 750 n.4 (7th Cir. 2011) ("*Bivens* authorizes the filing of constitutional tort suits against federal officers in much the same way that [Section 1983] authorizes such suits against state officers").

With respect to medical expenses, Mueller argues that insofar as Khorrami bases his claim of emotional distress on stresses attributable to medical expenses, it is only fair to allow cross examination on his out of pocket costs. Khorrami does not assert that medical expenses are the source of his emotional pain and suffering, so it is unlikely that Khorrami would "open the door" for cross-examination in this manner.

With respect to unemployment benefits, Mueller argues that Khorrami's certification that he was "able to work" undermines Khorrami's claim that his ability to make a living was impacted by the assault. Again, this is a spurious argument

because Khorrami was physically capable of working and flying a plane, but no airline would hire him because he had a heart attack. Thus, Khorrami's certification for unemployment benefits in no way undermines his credibility.

- **Khorrami's motion to exclude argument or evidence that a judgment against Mueller would burden taxpayers or the public** [ECF No. 186]

This evidence will be excluded because it is irrelevant and because of the danger of unfair prejudice. *See, e.g., Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 429 (7th Cir. 2008) ("Closing remarks that appeal to jurors' pecuniary interests as taxpayers are, of course, generally improper"); *United States v. Scott*, 660 F.2d 1145, 1170 (7th Cir. 1981) ("Since pecuniary interests would necessarily disqualify a prospective juror from service, it is patently improper to make an appeal to that interest in closing argument").

- **Khorrami's motion to exclude references to the fact that his counsel is not from Milwaukee** [ECF No. 188]

The parties agree that neither party will make reference to the fact that counsel for the other party is from out-of-town. ECF No. 192.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Mueller's Motion to exclude references to actual or alleged prior bad acts [ECF No. 172] is **GRANTED-IN-PART** and **DENIED-IN-PART**;

2. Mueller's motion to exclude references to alleged misconduct by others, purported misconduct unrelated to "kicking," and other irrelevant matters [ECF No.

- 17 -

174] is **DENIED**;

3.     Mueller's motion to exclude unidentified evidence of past medical expenses, future medical expenses, lost wages, lost future earnings, and diminished earning capacity [ECF No. 176] is **DENIED**;

4.     Mueller's motion to exclude witnesses that plaintiff failed to timely disclose [ECF No. 177] is **DENIED**;

5.     Mueller's motion to exclude references to potential indemnification and references to defense counsel or defendant as "the government" [ECF No. 178] is **GRANTED-IN-PART** and **DENIED-IN-PART**;

6.     Mueller's motion to exclude plaintiff's statements to Dr. Vogelmann regarding his alleged assault and hematuria [ECF No. 179] is **DENIED**;

7.     Khorrami's motion to bar all reference to, or evidence of, Khorrami's prior arrests or alleged bad acts [ECF No. 180] is **GRANTED**;

8.     Khorrami's motion to exclude reference to the ACLU [ECF No. 181] is **GRANTED**;

9.     Khorrami's motion to exclude argument that he was not lawfully present in the United States [ECF No. 182] is **GRANTED**;

10.     Khorrami's motion to exclude Mueller's expert reports and *curriculum vitae* [ECF No. 183] is **GRANTED**;

11.     Khorrami's motion to exclude evidence regarding his employment lawsuit [ECF No. 184] is **GRANTED**;

- 18 -

12.     Khorrami's motion to exclude argument and evidence regarding collateral source payments for injuries caused by Mueller [ECF No. 185] is **GRANTED**;

13.     Khorrami's motion to exclude argument or evidence that a judgment against Mueller would burden taxpayers or the public [ECF No. 186] is **GRANTED**;

14.     Khorrami's motion to allow, if defendant asserts an inability to pay defense, rebuttal that the Department of Justice will likely indemnify defendant from any damages award [ECF No. 187] is **GRANTED**;

15.     Khorrami's motion to exclude references to the fact that his counsel is not from Milwaukee [ECF No. 188] is **GRANTED**;

16.     Mueller's motion for leave to file documents under seal [ECF No. 175] is **GRANTED**; and

17.     Khorrami's motion for leave to file documents under seal [ECF No. 204] is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 6th day of January, 2014.

BY THE COURT:

HON. RUDOLPH T. RANDA
U.S. District Judge

- 19 -

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 739 | **DATE** | 11/19/2012 |
| **CASE TITLE** | Ratliff vs. City of Chicago | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Court grants in part and denies in part Defendants' motions in limine [94] and grants in part and denies in part Plaintiff's motions in limine [96]. The Court also grants Defendants' motion for leave to file an additional motion in limine 20 [111]. In light of the response and reply briefs filed on November 18, 2012 the Court reserves ruling on related motions in limine 5 and 20. The Court will discuss the recent filings with counsel at today's status hearing.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

**A.      Motions Granted Without Objection**

The Court grants without objection Defendants' motions in limine 4, 6, 7, 8, 9, and 12 and Plaintiff's motions in limine 1, 2, 3, 5, 6, and 12. Plaintiff did not submit a motion in limine 4.

**B.      Defendants' Contested Motions in Limine [94]**

      1.      Defendants' 1 and 10

In their motion in limine 1, Defendants move to bar Plaintiff from arguing or eliciting testimony to the effect that deficiencies in the hiring, training, or supervision of Defendant Officers contributed to Plaintiff's claims. Defendants point out that Plaintiff does not have a pending *Monell* claim or a claim of *respondeat superior* liability. Plaintiff does not object to the exclusion of evidence and argument related to any causal connection between hiring, training, and supervision and Plaintiff's injuries, but maintains that the Court should not bar all evidence related to training and supervision.

In their motion in limine 10, Defendants seek to bar Plaintiff from eliciting any testimony, evidence, or argument regarding the existence of or standards set by any General Orders, or other rules and regulations, including any allegation that the Defendant Officers violated a general order by agreeing to park Ratliff's car on Lorel Avenue.

As to both motions in limine 1 and 10, the Court agrees with Plaintiff that Defendants' motions are overly broad, yet (as noted at the final pre-trial conference) there are well-established limitations on the relevance of testimony relating to training, supervision, general orders, and police department policies. In regard to the

10C739 Ratliff vs. City of Chicago

Page 1 of 8

**STATEMENT**

issues raised in motion in limine 1, Plaintiff properly notes that the manner and method of documenting citizen complaints, performing stops, performing arrests, and inventorying property may touch on issues related to the training and supervision of Defendants. Therefore, to the extent Defendants' training and supervision are relevant to the incident in question, either side may inquire on these issues. Defendants' motion in limine 1 is denied to that extent. However, as explained more fully in the discussion below, the failure of Defendants to comply with any general or special orders or department policies concerning hiring, training, or supervision may not be used as either a sword or a shield in regard to whether a constitutional violation has occurred.

Turning to Defendants' motion in limine 10, the seminal case in this circuit on the admissibility of testimony, evidence, and argument pertaining to rules, regulations, standards, and General Orders of police or sheriff's departments is *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006). *Thompson* involved a § 1983 claim (for excessive force) and a state law claim (for wrongful death) arising out of the arrest of the plaintiff. The district court granted a motion *in limine* seeking to "exclude any reference in testimony, evidence, or argument to the CPD's General Orders, policies, and procedures." *Id*. at 449 & n.12 (explaining the slight discrepancy between the motion that the court granted and the text of the docket entry reflecting the granting of the motion). The Seventh Circuit affirmed the district court's ruling, both with respect to the use of General Orders as evidence of the federal constitutional violation and as evidence in support of the state law claim.

As to the constitutional violation, the Seventh Circuit categorically stated that "the violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established." *Thompson*, 472 F.3d at 455 (emphasis added); see also *Whren v. United States*, 517 U.S. 806, 815 (1996) (holding that internal police department rules are an unreliable guide to measuring the reasonableness of police conduct); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (holding that § 1983 "protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices"). In elaborating on its ruling, the Seventh Circuit explained that while evidence, testimony, or argument concerning possible violations of General Orders, rules, or regulations may be relevant to "discipline, promotion, or salary decisions" made by the Defendants' superiors, that kind of information is "immaterial" in proceedings before a district court on claims of constitutional violations and therefore "properly excluded" in rulings on motions *in limine*. *Thompson*, 472 F.3d at 455. For all of these reasons, Defendants' motion in limine 10 is granted in part, as the existence of the General Orders cannot be used in this case to show that the Plaintiff's constitutional rights were (or were not) violated.

Defendants also contend that testimony, evidence, and argument pertaining to rules, regulations, standards, and General Orders would be improper as to Plaintiff's state law claims. In *Thompson*, the Seventh Circuit "assume[d], without deciding, that the CPD's General Orders were relevant to [Plaintiffs'] wrongful death claim," but nevertheless "conclude[d] that they were properly excluded under Rule 403." 472 F.3d at 456. Although the statutory wrongful death claim at issue in *Thompson* appears to impose liability under a negligence standard (see *id*. at 457; see also 740 ILCS 180/1; *Leavitt v. Farwell Tower Ltd. P'ship*, 252 Ill. App. 3d 260, 264 (1993)), the Seventh Circuit relied on Illinois case law holding that "violation of self-imposed rules or internal guidelines * * * does not normally impose a general duty, *let alone constitute evidence of negligence, or beyond that, willful and wanton conduct.*" *Thompson*, 472 F.3d at 457 (emphasis added) (quoting *Morton v. City of Chicago*, 286 Ill. App. 3d 444 (1997)). Moreover, in completing its Rule 403 analysis, the Seventh Circuit expressly addressed – and rejected – the notion that a limiting instruction could render evidence of a failure to adhere to General Orders admissible. *Id*. As the court explained, "[a]ny limiting instruction explaining to the jury that, although General Orders do not create a duty on the part of an

## STATEMENT

officer and can only be used as evidence of a breach of protocol in a disciplinary proceeding – and that they could not be considered in conjunction with the plaintiffs' § 1983 claims – would have led to unnecessary and detrimental jury confusion." *Id.*

Thus, on the basis of the Seventh Circuit's decision in *Thompson*, any attempt to use General Orders, rules, or policies of the CPD as evidence of a federal constitutional violation appears to be forbidden under Rule 401. *Thompson*, 472 F.3d at 454. In addition, under *Thompson*, any effort to use such General Orders, rules, or policies in support of a state law cause of action that applies a negligence or willful and wanton standard appears to face, at a minimum, a very high hurdle under Rule 403. *Id.* at 457. Among other things, in conducting the Rule 403 analysis, the Court must consider whether the potential for a complex "trial within a trial" focused on General Orders, rules, and/or policies will distract the jury from the critical issues for decision while adding very little of probative value for their consideration.

While it is clear under *Thompson* that (i) the proponent of such evidence, testimony, or argument has a heavy burden to shoulder under Rule 401 and Rule 403, and (ii) limiting instructions may not be a viable means of overcoming Rule 403 issues, the Court cannot conclude definitively that there is no scenario in which General Orders, rules, or regulations conceivably could come into this case. Put differently, to the extent that the door remains open under *Thompson*, it is only slightly ajar. See *Via*, 2007 WL 495287, at *6 ("*Thompson* did not address the potential admissibility of evidence showing a violation of internal agency rules and procedures with regard to a claim for punitive damages").

In light of the foregoing, the Court grants in part Defendants' motion *in limine* 10 and bars any testimony, evidence, or argument regarding any CPD General Orders, policies, or procedures in support of Plaintiff's § 1983 liability claims. However, it is at least conceivable that the manner and method of documenting citizen complaints, performing stops, performing arrests, and inventorying property could raise issues about the training of Defendants and the use of general orders or policies *may* clarify for the jury what the evidence means. Thus, the Court reserves its decision as to any such testimony, evidence, or argument in support of a punitive damages claim or in other circumstances not foreclosed by *Thompson* and *Morton*. Should either side seek to introduce testimony, evidence, or argument regarding any CPD Office General Orders, policies, or procedures in those limited circumstances, counsel must notify the Court and opposing counsel outside the presence of the jury and with sufficient advance notice to permit analysis under Rules 401 and 403 in light of the applicable Seventh Circuit or Illinois case law.

      2.    Defendants' 2

Defendants move to bar Plaintiff from introducing or suggesting misconduct by officers or City of Chicago employees who are not named defendants in this matter. Defendants' reference to "misconduct" evidence relates to a conversation between Plaintiff and an older officer after his arrest, as well as to Plaintiff's interaction with the police department regarding his vehicle after his release from custody. Defendants' motion in limine 2 is denied in part. The evidence referred to in Defendants' motion is relevant because it is evidence of the incident in question. While the above-described evidence is not probative on the issues of probable cause and reasonableness, those are not the only issues before the Court. Plaintiffs are routinely permitted to describe their recollections of events from the moment of their arrest to the termination of any legal proceedings resulting from the arrest, as well as any additional consequences to them that plausibly can be attributed to the Defendants' conduct. Within those parameters, the evidence targeted in Defendants' motion in limine 2 therefore is relevant under 401 and 402. However, Plaintiff may not insinuate that any non-Defendant officers committed misconduct, since there are no claims against any such officers in this case.

10C739 Ratliff vs. City of Chicago                                                     Page 3 of 8

Case 2:09-cv-00870-RTR    Filed 02/09/15    Page 22 of 44    Document 187-1

# STATEMENT

3.    Defendants' 3

Defendants' move to bar Plaintiff from arguing that Defendants and non-defendant City employees are biased and generally protect one another because of their allegiance to fellow City workers. In other words, Defendants seek to bar evidence or arguments about a "code of silence." Plaintiff has indicated in his response that he wants to examine the issue of bias on cross examination and that the code of silence may be properly raised in this context.

Defendants argue that such evidence is akin to prior bad acts evidence and would violate Federal Rules of Evidence 401, 402, and 403. However, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel,* 469 U.S. 45, 52 (1984). Indeed, "[a] party's and a witness's common group membership is probative of bias * * *." *Townsend v. Benya,* 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003). Thus, to the extent that Plaintiff focuses on the officers and incidents involved in this case, Plaintiff may explore the possibility that the defense witnesses in this case are biased because of loyalty to one another. See, *e.g., Saunders v. City of Chicago,* 320 F. Supp. 2d 735, 740 (N.D. Ill. 2004); *Galvan v. Norberg,* 2006 WL 1343680, at *3 (N.D. Ill. May 10, 2006) (denying motion in limine seeking to bar "code of silence" evidence since "evidence or argument of this type can go to the issue of the bias or motivation of witnesses").

With that said, the Court agrees with Defendants that generalized allegations—separate and apart from what may be true of the officers named as Defendants here—are not helpful and are akin to impermissible propensity evidence. *Maldonado v. Stinar,* 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) (allowing evidence of bias among the particular officers involved in the incident at issue there, while excluding generalized evidence of a "code of silence" or "blue wall" (citing *Christmas v. City of Chicago,* 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010) (same), and *Moore v. City of Chicago,* 2008 WL 4549137, at *6 (Apr. 15, 2008) (same))); see also *Betts v. City of Chicago,* 2011 WL 1837805, at *5 (N.D. Ill. May 13, 2011); *Caldwell v. City of Chicago,* 2010 WL 380696, at *3 (N.D. Ill. Jan. 28, 2010) (barring plaintiff from presenting evidence showing police generally protect or cover up for each other and that there is a code of silence in the CPD). Unlike some plaintiffs in other cases (see, *e.g., Obrycka v. City of Chicago,* 2012 WL 601810, at 7-8 (N.D. Ill. Feb. 23, 2012), in which expert testimony tailored to the specific facts of a case has persuaded courts to allow "code of silence" arguments, the evidence in this case supports only the usual cross-examination for bias. Thus, Defendants' third motion *in limine* is granted in part and denied in part as follows: (1) Plaintiff may present evidence that Defendant Officers are attempting to cover up the (allegedly) wrongful conduct arising from the incidents in this case or otherwise are biased toward one another; (2) Plaintiff may not use the terms "code of silence" or "blue wall" as these terms are unduly prejudicial; and (3) Plaintiff may not introduce evidence or argue that law enforcement officers typically adhere to a "code of silence" or "blue wall" or seek to cover up misconduct in order to protect fellow officers.

4.    Defendants' 11

Defendants seek to bar any comment on Defendants' failure to call witnesses or produce evidence. Defendants request that the Court bar Plaintiff from conveying to the jury that Defendants are hiding exculpatory evidence by choosing not to call a particular witness or present certain evidence. Plaintiff contends that it is an accepted routine tactic to point to missing testimony and evidence of an opponent. The Court agrees with Defendant that it would be improper for Plaintiff to insinuate without evidentiary support that Defendants are purposefully attempting to hide evidence, particularly since Plaintiff bears the burden of proving his case. Therefore, the Court grants in part Defendants' motion in limine 9. However, the Court is

**STATEMENT**

not barring Plaintiff from arguing that there are deficiencies in Defendants' case due to the absence of testimony by certain individuals or the absence of certain evidence. It is merely improper for Plaintiff to insinuate that Defendants are purposefully hiding evidence or to suggest that Defendants bear the burden of proof. The Court will instruct the jury as to Plaintiff's burden of proof.

5.    Defendants' 13

Defendants' thirteenth motion in limine seeks to bar testimony regarding conversations with unknown and undisclosed individuals. Plaintiff does not object to a bar on evidence from Plaintiff about observations made by the gas station attendant on the date of Plaintiff's arrest. However, Plaintiff objects to the rest of the motion. According to Plaintiff, he obtained the security video from the service station that shows the incident in question. Plaintiff maintains that the conversation with the attendant is not hearsay because it is not offered to prove the truth of the matter asserted but rather is offered to prove the course of his investigation. At this point, the Court denies without prejudice Defendants' thirteenth motion in limine. If Plaintiff can lay the foundation for this evidence (the videotape) in a non-hearsay manner, then Plaintiff may use this evidence, as it is relevant to the issues at trial. However, if Plaintiff failed to disclose this evidence or is unable to lay a foundation for the evidence, the evidence will not be admitted at trial.

6.    Defendants' 14

Defendants seek to bar Plaintiff from calling non-party witnesses as hostile witnesses or as witnesses identified with an adverse party. Plaintiff objects, noting that witnesses identified with an adverse party are presumed hostile in law under 611(c). See *Ellis v. City of Chicago*, 667 F.2d 606, 612-13 (7th Cir. 1981) (noting that "when the city is a defendant in a §1983 claim, police officers employed by the city and who were present during portions of the incident at issue are 'clearly qualified as a witness identified with an adverse party'"); *Favila v. City of Chicago*, No. 09-C-3265 (N.D. Ill. June 1, 2011) (holding that "the real test for leading questions under the Rule is whether the other officers are "identified with an adverse party" in this case). At this juncture, Defendants' motion is denied as premature. The Court has instructed the parties to provide the Court with a list of witnesses that they intend to call as adverse and any objections the opposing side may have to those designations. After the Court reviews those designations, the Court will determine whether the witnesses are in fact adverse and thus properly classified as hostile.

7.    Defendants' 15

Defendants seek to bar testimony or opinions by any witnesses without medical training regarding Plaintiff's alleged emotional injuries. Defendants' motion is granted in part and denied in part. To the extent that Plaintiff's witnesses attempt to diagnose Plaintiff with a clinical illness, the witnesses will be barred from doing so. However, Plaintiff may testify about what happened and how he felt after the incident. To the extent that they have been disclosed, Plaintiff also may present witnesses who can testify to Plaintiff's behavior after the incident. In sum, Plaintiff may offer testimony about treatment and symptoms, but cannot offer medical opinion testimony. Specifically, Plaintiff cannot testify as to causation, only as to what happened and how it made him feel. See *Banister v. Burton*, 636 F.3d 828 (7th Cir. 2011); *Meyers v. National Railroad Passenger Corp.*, 619 F.3d 729 (7th Cir. 2010).

8.    Defendants' 16

Defendants seek to bar any statement that Defendants have not complied with or been diligent with respect to any discovery issue. Defendants' motion is granted in part and denied in part. To the extent that a discovery

10C739 Ratliff vs. City of Chicago                                                                 Page 5 of 8

Case 2:09-cv-00870-RTR     Filed 02/09/15     Page 24 of 44     Document 187-1

## STATEMENT

issue arises during the course of the trial, the parties are instructed to bring the issue to the Court's attention outside the presence of the jury. In regard to Defendants' amended answer, Plaintiff may cross-examine Defendants on the fact that Defendants changed their answer to the complaint midway through the litigation. However, Plaintiff may not run afoul of Judge Keys' ruling, for instance by suggesting that Plaintiff did not receive an opportunity to challenge Defendants' new assertions. The time for raising any objections to Judge Keys' ruling has passed. In any event, the Court agrees with the ruling and sees no basis for modifying it for trial.

9.    Defendants' 17

As explained on the record during the final pretrial conference in this matter, Defendants' motion seeking to bifurcate Plaintiff's malicious prosecution claim or to bar evidence of the striking of Plaintiff's arrest is not well-founded. Bifurcation is not in the interest of judicial economy. The claims asserted by Plaintiff are interwoven and it would be an unreasonable hardship and completely uneconomical to require proof of virtually the same facts in two separate trials. Furthermore, the mode of the dismissal of the criminal charges is an element of Plaintiff's malicious prosecution claim. As is routine practice through this circuit, such claims are often tried together and with good reason. The issues in this case (and others like it) are not complex, and the Court has no concerns about juror comprehension in light of the instructions that will be given. Defendants' seventeenth motion in limine is denied.

10.    Defendants' 18

Defendants seek to bar "any claims of defamation." Defendants' motion is granted in part. Plaintiff has not brought a defamation claim. Rather, he seeks damages as a result of the alleged harm that he received as a result of his arrest and incarceration. Plaintiff can testify to the harm that he believes he has suffered, including any feelings of embarrassment and/or humiliation that he may have felt, and Defendants can cross-examine him on that testimony. However, because "defamation" is a legal concept that has a defined meaning and Plaintiff has asserted no claim to relief under a defamation rubric, any claim for damages specifically related to alleged "defamation" must be excluded as both irrelevant and likely to cause juror confusion.

11.    Defendants' 19

Defendants seek to bar any claim for damages regarding Plaintiff's stolen motor vehicle. Defendants' motion is denied. The issue here is whether theft of a motor vehicle is a reasonably foreseeable consequence of parking the vehicle on the curb and leaving it unlocked, following the arrest of the owner. This is a question of fact for the jury. Similarly, the amount of damages that the jury may award Plaintiff for the loss of his vehicle is an issue appropriate for the jury. Defendants may present evidence to rebut Plaintiff's damages evidence—for instance, Defendants may cross-examine Plaintiff about any liens on his car or about the value of his car—but the Court will not bar Plaintiff from pursuing damages related to his car.

## C.    Plaintiff's Contested Motions in Limine [96]

1.    Plaintiff's 7

Plaintiff seeks to bar Defendants from making any reference to any and all prior arrests as well as any reference to prior convictions, if any. According to Plaintiff, he has one prior arrest for theft in 2005, for

10C739 Ratliff vs. City of Chicago                                                                                    Page 6 of 8

Case 2:09-cv-00870-RTR    Filed 02/09/15    Page 25 of 44    Document 187-1

# STATEMENT

which he was not convicted.

Plaintiff's seventh motion in limine is tied to Defendants' fifth motion in limine. As set forth in ruling on Defendants' fifth motion, to the extent that Plaintiff does not put his arrest record at issue, Defendants may not refer to any prior arrests. The prejudice resulting from the introduction of evidence of Plaintiff's prior arrests substantially outweighs the limited relevance that such evidence would have in this case. See *Young v. Cook County*, 2009 WL 2231782, at *6 (N.D. Ill. Jan. 27, 2009) (excluding evidence of prior arrests in § 1983 case as "grossly unfairly prejudicial in a way that greatly outweighs its minuscule probative value"). In the unlikely event that Plaintiff opens the door by stating that he had never been arrested prior to the incident in question, or by claiming that the current incident and arrest have adversely affected his ability to secure employment, he likely will open the door to Defendants' inquiry on his prior 2005 arrest. Should this issue arise at trial, the Court will take up this matter outside the presence of the jury.

    2.    Plaintiff's 8

Plaintiff asks the Court to bar Defendants from eliciting testimony regarding past incidents of gang activity or police calls in the neighborhood where Plaintiff was arrested. Stated a different way, Plaintiff moves to bar any reference to the arrest location as a "high crime" area under Rule 403. Defendants respond that this evidence is relevant and its probative value outweighs any risk of prejudice. To determine whether Defendants had probable cause to arrest Plaintiff, the jury must evaluate "the common-sense judgment of the officers based on a totality of the circumstances," including Plaintiff's "presence in a high crime area." *United States v. Reed,* 443 F.3d 600, 603 (7th Cir. 2006); *United States v. Brown,* 188 F.3d 860, 865 (7th Cir. 1999); *Betts v. City of Chicago, Ill,* 2011 WL 1837805, at *1 (N.D. Ill. May 13, 2011). Accordingly, reference to the area where Plaintiff was arrested provides the jury with context and will be permitted. With that said, any such testimony elicited may address (briefly) Defendants' personal experience in the area where the arrest took place and should focus on "objective factual terms" without resorting to sweeping generalizations or belaboring the relevant points. See *Peters v. City of Chicago*, 2011 WL 679911, at *1 (N.D. Ill. Feb. 16, 2011). For instance, Defendants should not use "high crime area" to describe the location where Plaintiff was arrested, but may describe why they were in the area (*e.g.,* to investigate narcotics activity) to the extent that the evidence supports this testimony. Subject to those limitations, Plaintiff's eighth motion in limine is denied.

    3.    Plaintiff's 9

Defendants charged Plaintiff with assault. The threat alleged in this case is, "If you don't let me finish filling my tires with air, I'm going to kill you." Plaintiff believes that Defendants will seek to prove the reasonableness of Defendants' apprehension of an alleged threat by reference to Defendants' lack of knowledge about (i) items that could have been concealed around the wheel or under Plaintiff's vehicle or (ii) Plaintiff's alleged drug dealing (of which there does not appear to be any evidence). In other words, Plaintiff believes that Defendants may attempt to establish an assault based upon circumstances unknown to Defendants or upon their belief that Plaintiff sold drugs and thus moves to bar any argument of "the unknown of drug sales in order to establish that an aggravated assault occurred or probable cause thereof." Put yet another way, it appears that Plaintiff fears that Defendants will rely on speculation in attempting to establish the reasonableness of their apprehension of an imminent assault.

The reasonableness of Plaintiff's arrest for aggravated assault is a question of fact for the jury to decide. Testimony set forth by Defendants indicates that they intend to present evidence that they initially attempted to conduct a field interview with Ratliff because they witnessed potential narcotics-related activity.

Case 2:09-cv-00870-RTR    Filed 02/09/15    Page 26 of 44    Document 187-1

**STATEMENT**

Defendant Officers' testimony regarding the circumstances of their initial and continued interaction with Plaintiff is relevant to the arrest and Plaintiff's allegations. Furthermore, the jury will have to consider the reasonableness of Defendant Officers' understanding at the time of the incident. Whether Defendant Officers believed the Plaintiff had weapons or narcotics is a factor for the jury to consider when assessing the arrest of Ratliff. However, the jury also will consider the absence of drugs and a weapon at the scene in deciding whether Defendants' actions were reasonable. At the conclusion of the parties' presentations, the jury will be instructed on the elements of assault and will be allowed to consider the reasonableness of the beliefs held by the officers at the time of the arrest as well as the evidence (or lack of evidence) presented to support those beliefs. Defendant Officers' testimony regarding their belief as to Plaintiff's actions prior to and during the arrest are facts that may be presented to the jury. Plaintiff's ninth motion is denied.

4.    Plaintiff's 10

Plaintiff's tenth motion in limine is denied. Whether Defendant Officer Carroll received notice to appear in court is a question of fact for the jury to decide. Plaintiff may cross examine Defendant Officer Carroll at trial on his inconsistent positions during this litigation through his deposition testimony or with Defendants' initial answer to Plaintiff's complaint.

5.    Plaintiff's 11

During the final pretrial conference, both Plaintiff and Defendants indicated to the Court that they do not intend to use the IPRA records and findings during trial unless the opposing side raises the issue. At this stage, the parties have not presented any good reason for presenting any evidence related to the IPRA investigation. Therefore, the Court provisionally grants Plaintiff's eleventh motion in limine.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KIM YOUNG, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 06 C 552** |
| | ) | |
| **COUNTY OF COOK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

      This case is set for trial on August 3, 2009 regarding the claims on which the

Court did not grant summary judgment, specifically, claims by one of the two plaintiff

classes ("Class 1") regarding the conduct of strip / body cavity searches upon incoming

male detainees at the Cook County Jail from February 2007 through the present. The

propriety of strip searches as such is not challenged via these claims. Rather, the

remaining claims concern equal protection – the allegedly unjustified differential

treatment of male detainees as compared with female detainees; the Fourth

Amendment – regarding the manner in which Jail personnel conducted the searches;

and the Eighth Amendment and the Due Process Clause – whether the searches, given

how they were conducted, amounted to the improper infliction of punishment upon

pretrial detainees.

      The Court rules as follows on the parties' motions *in limine*.

**Defendants' motions**

1.      The Court grants defendants' motion to bar plaintiffs from calling at trial class member witnesses who were noticed for deposition but did not appear.  The Court made it clear to plaintiffs in early June that it would preclude from testifying any class member witness who did not appear for deposition.  Plaintiffs had ample opportunity to secure their proposed witnesses' presence at a deposition prior to trial.

2.      The Court denies defendants' motion to bar plaintiffs from calling in their case in chief any class members who are not named class representatives. Defendants cite no basis in law for the proposition that an unnamed class member should not be permitted to testify at the trial of a class action.  There is likewise no basis for the proposition that unnamed class members are cumulative witnesses as a matter of law or that the purported "atypicality" of their testimony is a basis under the Federal Rules of Evidence or otherwise to bar them from testifying.  The Court reserves the right pursuant to Rule 403 to prevent the presentation of unduly cumulative evidence as the trial develops.

3.      Both sides in the case agree that the trial concerns strip / body cavity search practices from February 2007 through the present.  Defendants have moved on relevance grounds to bar witnesses who were admitted into the Cook County Jail prior to that date from testifying.  The Court wishes to hear defendants' response to plaintiffs' argument that testimony regarding the Jail's practice at earlier dates is relevant to show defendants' allegedly deliberate indifference to conditions in February 2007 and thereafter.

4.      Defendants argue that a correctional officer's use of offensive language

2

does not violate the Constitution and thus any evidence of that should be excluded; conducting strip searches of males in the presence of female officers does not violate the Constitution and thus any evidence of that should be excluded; and the presence of offensive smells during a strip search does not violate the Constitution and thus any evidence of that should be excluded as well. These requests reflect a rather obvious misunderstanding of the plaintiffs' claims and the applicable law. The determination of the constitutionality of defendants' alleged practices is based on the totality of the circumstances. It is inappropriate to compartmentalize each bit of plaintiffs' evidence and view it in isolation. The Court therefore denies defendants' motion to preclude this evidence (motion 4A, B & D), leaving for later determination the extent to which the legal points argued by defendants should be addressed in jury instructions.

The Court also denies motion 4C, in which defendants seeks to preclude evidence regarding Cook County Jail internal regulations. Just last week, in *Mays v. Springborn*, No. 05-3630, 2009 WL 2046484 (7th Cir. July 16, 2009), a case involving (among other things) strip searches in a prison setting, the Seventh Circuit stated that such evidence should be admitted: "although violation of the prison's rule against public searches was not, by itself, a violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass." *Id.* at *5 (internal citation omitted). Such evidence is relevant to, at a minimum, plaintiffs' Eighth Amendment claim.

5. The Court wishes to hear further argument at the pretrial conference on defendants' motion to bar evidence of purportedly "unrelated incidents" of claimed abuse. The Court needs to have a better sense of exactly what plaintiffs intend to offer

3

in this regard and to get defendants' reply to the arguments made at pages 5-7 of plaintiffs' response to defendants' motion.

6.     The Court denies without prejudice defendants' motion to bar any use of pleadings and discovery responses (motion 6A & B).  If plaintiffs attempt to use such documents at trial in a manner defendants believe is inappropriate under the Rules of Evidence, they should renew their objection at that time.

The Court wishes to hear further argument on defendants' motion to bar plaintiffs from using complaints and court filings from other lawsuits as evidence of notice, deliberate indifference, and other matters (motion 6C).  Specifically, defendants should be prepared to address at the pretrial conference the points made in plaintiffs' response at page 8.

The Court denies defendants' request to bar plaintiffs from using the American Correctional Association's standards (part of motion 6D).  A recently-produced January 2007 revision to the Jail's strip search policy cites certain of those standards.  Because, however, the Court is elsewhere barring defendants from offering, via their expert Norman Carlson or otherwise, evidence that the ACA purportedly approved or did not object to the Jail's practices, plaintiffs may wish to rethink their intention to offer the ACA standards.

Defendants also ask the Court, on hearsay grounds, to bar plaintiffs from offering a report regarding the Jail issued by the U.S. Department of Justice pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997a.  The report references the Jail's strip search practices.  It appears to the Court from plaintiffs' response that plaintiffs can satisfy the requirements of Federal Rule of Evidence 803(8) with regard to

4

the report.  Defendants should be prepared to address this point at the pretrial

conference.

7.      Defendants ask the Court to bar what they contend is inadmissible

evidence of subsequent remedial measures, specifically, evidence that the Jail's use of

partitions during strip searches of male detainees resulted from the settlement of

*Thompson v. Cook County*, Case No. 03 C 7172 (N.D. Ill.).  Defendants also ask the

Court to bar evidence that partitions were first used in February 2007.  The Court has a

hard time seeing how the latter fact, by itself, is inadmissible, and defendants make no

viable argument supporting exclusion of that fact.  The Court denies their motion to that

extent.  As for the reference to the settlement of the *Thompson* case, plaintiffs contend

that defendants paid only lip service to their agreement to use partitions.  They argue

that the fact that defendants agreed to the practice as part of the settlement of a lawsuit

supports the proposition that they agreed to it only grudgingly and as a result did not

ensure compliance with the agreement.  The Court wishes to hear defendants'

response to that argument.

The Court also requires further argument regarding defendants' position

concerning evidence of the post-lawsuit introduction of the use of body scanning

machines in lieu of strip searches.  Defendants should be prepared to address the

points made at pages 14-15 of plaintiffs' response.

8.      Defendants' motion to bar evidence of other lawsuits appears to duplicate

motion 6C, on which the Court has asked to hear further argument.

9.      The Court grants defendants' motion to exclude an April 2001 Chicago

Tribune editorial regarding strip searches of women detainees and former Sheriff

5

Michael Sheahan's response to the editorial. The probative value of this evidence is significantly outweighed by its unfairly prejudicial effect.

10.    Defendants ask the Court to bar plaintiffs from using affidavits prepared by around 500 class members who will not testify at trial and from using a summary of those affidavits. The affidavits, all of which were prepared well after the case was filed, are undeniably hearsay and are thus inadmissible as evidence in chief. Plaintiffs argue that the claims being tried concern the constitutionality of defendants' practices through the present date and that the affidavits are admissible to show that defendants were on notice of complaints regarding their strip / body cavity search practices. The Court has a hard time imagining that there is a serious issue regarding such notice at any date after this lawsuit was filed in 2006. If defendants make an issue of that at trial, the Court will entertain a request to admit the affidavits or a summary of them to rebut defendants' contention in this regard.

Plaintiffs also argue that the affidavits may be used during the testimony of their "correctional practices" expert and to cross examine defendant's expert. The Court will not preclude plaintiffs' expert from rendering opinions in reliance in part on the affidavits – assuming an adequate foundation is laid under Rule 703 for the expert's reliance – but that does not, by itself, permit plaintiffs to communicate the affidavits' contents to the jury via their expert. *See* Fed. R. Evid. 703 ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."). Though the Court will not preclude plaintiffs from eliciting on direct examination the fact that

6

their expert relied upon affidavits from detainees, plaintiffs have not, at this point, made the necessary showing under Rule 703 to admit the contents of those affidavits during the direct examination of their expert.   Whether plaintiffs may elicit those contents on redirect may depend, at least in part, on defendants' cross-examination of the expert. Plaintiffs should ask for a sidebar prior to their redirect if they believe defendants have opened the door.  The Court deals elsewhere with plaintiffs' request to cross-examine of defendants' expert regarding the contents of the affidavits.

11.   In response to defendants' request to bar previously undisclosed witnesses, plaintiffs agree that they will use no such witnesses in their case in chief.

12.   Defendants' request to "bar any speculation or hearsay by class witnesses" is far too vague to be granted as a motion *in limine*.  Defendants should make the necessary objections during trial.

13.   Defendants' motion to admit past convictions and prior bad acts of plaintiffs' witnesses is denied, without prejudice.  Defendants provide no specifics in their motion.  If defendants wish to offer a prior conviction or bad act of a witness that is not dealt with elsewhere in the Court's ruling, they will be required to raise any such issues at a sidebar before the particular witness takes the stand to testify.

### Plaintiffs' motions

1.   The Court denies plaintiffs' motion to bar relitigation of certain matters. The Court does not take issue with the fact that matters it ruled upon on summary judgment or otherwise are now the law of the case and not subject to relitigation, but it does not see anything in particular to be gained by determining before trial that the particular facts cited by plaintiffs are no longer subject to dispute.

7

2.      Plaintiffs have moved to bar argument or evidence about specific instances of finding contraband, arguing that is not a relevant issue on the claims remaining for trial.  The Court wishes to hear at the pretrial conference plaintiffs' reply to the arguments made by defendants at pages 3-4 of their response brief.

3.      Plaintiffs have moved to bar evidence or argument regarding witnesses' and class members' non-filing of internal grievances regarding strip / body cavity searches.  Introducing evidence of a witness's failure to complain about allegedly wrongful conduct is an appropriate means to attempt to impeach the witness.  The Court therefore denies plaintiffs' motion to the extent they asks the Court to bar defendants from doing that.  This likely will entitle plaintiffs, as they suggest in their response, to offer evidence regarding the availability and witnesses' awareness of the grievance system, but that detour, if that is what it is, is not a sufficient basis under Rule 403 to bar defendants from this line of cross examination.

The issue of exhaustion of remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), is another matter.  The Seventh Circuit has recently made it clear that non-exhaustion is an issue for the court, not the jury, and that it is typically an issue that a defendant can and should (and perhaps must) take up at an early stage of the litigation – which defendants did not do in this case.  *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).  The Court also agrees with plaintiffs that in the class action setting, the exhaustion requirement is satisfied if one class member exhausted internal Jail remedies.  *See Gates v. Cook*, 376 F.3d 323, 330 (5th Cir. 2004); *Lewis v. Washington*, 265 F. Supp. 2d 939, 942-43 (N.D. Ill. 2003); *see also, Romasanta v. United Airlines, Inc.*, 537 F.2d 915, 919 (7th Cir. 1976) (Title VII class action), *aff'd sub*

8

*nom. United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977). If defendants actually intend to press an exhaustion defense at this late date, they must so advise the Court in writing by the close of business on July 27, 2009, including authority supporting the current viability of this defense in view of the fact that it is was not the subject of a dispositive motion (the time for which long ago expired) and is being pressed for the first time on the eve of trial. Plaintiffs must then advise the Court by the close of business on July 28, 2009 regarding which exhausted grievance(s) they intend to offer to satisfy any exhaustion requirement, including authority regarding whether defendants have forfeited the defense by failing to bring it to the Court's attention earlier. The Court will resolve the matter at the pretrial conference or thereafter.

4. The Court denies plaintiffs' motion to bar testimony that weapons could be made from the dividers and that prisoners attempted to tamper with them. Defendants will have to lay a proper foundation for such testimony (personal knowledge, non-speculativeness, etc.), but if they can do so, it is relevant and not unfairly prejudicial or confusing.

5. The Court grants plaintiffs' motion to bar evidence or argument regarding probable cause or bond hearings that take place in state court before a detainee is brought to the Jail. Defendants' argument that such evidence is somehow relevant is strained; they articulate no basis upon which this evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even had defendants done so, this evidence would present a likelihood of jury confusion that would far outweigh any limited probative value it might have. *See* Fed.

9

R. Evid. 403. There is a significant likelihood that a jury would improperly infer that the fact that a detainee was committed to custody by a court rendered appropriate the Jail's treatment of the detainee.

6. The Court grants plaintiffs' motion to bar evidence and argument about the *Duran* consent degree, any oversight of strip searches by the court-appointed monitor in the *Duran* case, accreditation of the Jail by the American Correctional Association, and inspections by the IDOC. Faced with an argument in which plaintiffs squarely argued that none of these persons or agencies reviewed the strip / body cavity search methods as practiced by the Jail that are at issue in this case, defendants made no attempt to argue the contrary proposition, much less describe the evidentiary foundation for any such contention. The evidence is therefore irrelevant. Even if this evidence had some probative value – which is difficult to imagine – it would be far outweighed by the unfair prejudice and potential for jury confusion that would result from its admission.

7. Plaintiffs have moved to bar evidence regarding the particular charges witnesses were facing at the time they were strip searched at the Jail. They argue that because the claims that being tried in this case assume that a strip search may be done and challenge only the manner in which such searches are conducted and the differential treatment of women and men, the charges the witnesses were facing at the time of the search are irrelevant. Defendants argue generally that the nature of the charges bears on "the reasonableness of the search," Response at 8, but they do not elaborate or explain. The Court will give defendants one more opportunity to do so and will give plaintiffs an opportunity to respond. Both sides should be prepared to address

10

this point at the pretrial conference.

The Court notes that if it ends up excluding evidence regarding the charges the witnesses faced, plaintiffs will be barred from eliciting any claims of wrongful detention or arrest.

Defendants also argue that if a witness had been sleep deprived or was intoxicated at the time of the incarceration, that could bear on the believability of the witness' testimony regarding the circumstances of the search he experienced. The Court deals with this issue later, with regard to plaintiffs' motion *in limine* 11.

8.     Plaintiffs seek to bar defendants from introducing evidence regarding prior bad acts, arrests, and inadmissible convictions of plaintiffs' witnesses. Defendants respond, in part, that evidence of convictions for traffic offenses and other crimes not reaching Rule 609's threshold are admissible under Rule 608(b) as prior acts bearing on credibility. The only example they give is that of a witness who has repeatedly driven on a suspended driver's license and who thus "admittedly disregard[s] the law daily." Response at 8. The contention that such acts are admissible under Rule 608(b) is frivolous; such acts are in no way "probative or truthfulness or untruthfulness," Fed. R. Evid. 608(b), and even if a cogent argument to the contrary could be made, the Court would exclude such evidence as grossly unfairly prejudicial in a way that greatly outweighs its minuscule probative value. *See* Fed. R. Evid. 403. The same is true of arrests that have not resulted in convictions.

The only convictions that the Court will consider admitting are those that qualify under Federal Rule of Evidence 609(a)(1) & (2) – felony convictions, subject to a Rule 403 analysis, and convictions involving dishonesty or false statement. But because

11

defendants have identified no such convictions other than one relating to Tommie Daniels, they must, before they may refer to anything of the sort in the presence of the jury, make a written proffer regarding the particular conviction they intend to offer as to a particular witness so that the matter may be taken up outside the jury's presence before the witness takes the stand to testify.

Defendants also argue that the fact that witnesses may be familiar with search procedures and may have made multiple trips to the jail is relevant. Even if so, the admission of such evidence has barely any probative value at all – defendants make only a passing attempt to argue otherwise, *see* Response at 9 – and the evidence would be unfairly prejudicial to plaintiffs in a way that far outweighs that limited probative value.

9. Plaintiffs seek to bar certain opinions by defendants' expert witness Norman Carlson.

a. Carlson has rendered an opinion that strip searches of detainees without privacy dividers affords a reasonable degree of privacy. The Court ruled otherwise on summary judgment with regard to the Jail's conduct of such searches up until February 2007. That is why the claims remaining for trial include only the period from February 2007 (when dividers were installed) to the present. It would be inappropriate for defendants to seek to introduce through a witness a contention that is contrary to a ruling that the Court has made. The Court also notes that plaintiffs argue that Carlson premised his views in this regard on an unsupported rejection of the believability of sworn affidavits by detainees, and that in doing so he has used improper methodology. Defendants have not responded to this argument and have thus forfeited

12

the point in any event.  The Court assumes that its rulings renders moot plaintiffs' argument that they should be able to introduce the contents of the affidavits in cross-examining Carlson (*see* Defs.' Motion ¶ 10).

        b.    Carlson has opined that certain language in the Illinois Administrative Code requires jails to conduct strip searches of every detainee entering a jail.  Plaintiffs dispute Carlson's reading of the regulation.  The Court excludes this opinion.  As noted earlier, the claims remaining for trial assume a strip search may be done but challenge the manner in which the search is done.  Carlson's opinion regarding whether the regulation requires a strip search is thus irrelevant and, in addition, would be unduly confusing to the jury.  The Court further notes that defendants have forfeited any argument regarding the relevance of this evidence by failing to explain its relevance despite being faced with an argument by plaintiffs that unambiguously put relevance in issue.  *See* Pls.' Motion at 14.

        c.    The Court also excludes Carlson from referring to or relying upon the absence of any mention of strip searches in reports by the *Duran* court-appointed monitor, for the reasons previously discussed with regard to plaintiffs' motion 6.

        10.    The Court denies plaintiffs' motion to bar testimony or argument that men and women face substantively different charges or present different security risks that justify differential treatment.  The points that plaintiffs make in this motion are matters for cross-examination and argument (and, perhaps, for a jury instruction regarding speculation and reasonable inferences), not a basis to exclude such evidence.  Defendants will, of course, be required to lay a proper foundation for any such evidence.  If they fail to do so, plaintiffs should object when the evidence is offered, and

13

the Court will make a ruling at that time.

The Court also rejects plaintiffs' argument that such evidence should be excluded due to the lack of timely pretrial disclosure under Federal Rule of Civil Procedure 26(a)(2). That rule does not require pretrial disclosure of lay witness opinion testimony admissible under Federal Rule of Evidence 701, which is what is at issue here – though the Court again notes that defendants will be required to lay the foundation under Rule 701(a), and if they fail to do so, the Court will not hesitate to exclude the testimony.

11.    Plaintiffs have moved to bar introduction of evidence regarding a witness's use of drugs or alcohol. Such evidence may be relevant to show a witness's possible inability to recollect clearly or relate accurately what he observed. But the Seventh Circuit has recently made it clear that "there is considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony. . . . A court must, therefore, be chary in admitting such evidence when it is offered for the sole purpose of making a general character attack." *Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008). Because defendants make no attempt to identify which witnesses they propose to cross-examine on this basis or what good-faith basis they have to do so, the Court will require them to make a proffer of such evidence outside the jury's presence before any such witness takes the stand to testify. If the Court permits such evidence it will entertain any request by plaintiffs to give the jury a cautionary instruction.

12.    The Court denies without prejudice plaintiffs' motion to bar documents about class members that are claimed to have been untimely disclosed, because

14

plaintiffs have provided no specifics.  The Court rejects, however, defendants' argument that Federal Rule of Civil Procedure 26(a)(3)(A) somehow permits late production of documents that bear only on impeachment.  Careful reading of that Rule makes it readily apparent that it concerns disclosure of a party's intention to use exhibits at trial – essentially, the equivalent of this District's pretrial order requirements – not the timing for a party's production of documents that were requested or otherwise required to be produced during discovery.

13.     The Court grants plaintiffs' motion to bar defendants from making arguments about budgetary considerations or taxes or otherwise appealing to the jury's pecuniary interests.  Defendants offer no authority that the standard for the constitutional violations claimed in this case, or the obligation to comply with the Constitution, depends upon a government agency's financial condition.

14.     The Court grants, pursuant to Rule 403, plaintiffs' motion to bar reference to tattoos, body pierces, and other body markings.  The Court will entertain reconsideration if defendants make a showing, outside the presence of the jury before a particular witness takes the stand to testify, along the lines proposed by plaintiffs at the top of page 20 of their motion (i.e., identification of the particular marking on the particular witness and a showing of its relevance sufficient to overcome its potential for unfair prejudice).

15.     The Court grants, pursuant to Rule 403, plaintiffs' motion to bar reference to military practices.  The probative value of this evidence – to show, supposedly, that certain plaintiffs' witnesses experienced similar abuse when in the military – is minuscule at best, and it is far outweighed by the potential for jury confusion.

15

16.     Plaintiffs have moved to bar defendants from calling class members whom plaintiffs do not call at trial; defendants have listed some such persons as "may call" witnesses.  The Court will require further argument on this point, including giving plaintiffs an opportunity to respond to the argument made at pages 14-15 of defendant's response.  The Court also will inquire of defendants whether they made disclosures sufficient to comply with their obligations under Rule 26(a)(1) regarding these witnesses.  The Court notes that to the extent it permits defendants to call any such witness, it will not permit them to do so for the purpose of putting in the witness's convictions or prior bad acts and will entertain barring defendants, pursuant to Rule 403, from attempting to impeach "their" witnesses with prior convictions or bad acts. The Court also directs defendants to be prepared to address at the pretrial conference how they propose to introduce into evidence the alleged incident involving Bennie Ellison, which appears to be the subject of pending criminal charges that likely would lead Ellison to claim his privilege against self-incrimination.

17.     Plaintiffs' motion to bar evidence or argument about damages is granted without objection; this is a liability-only trial.

18.     The Court denies plaintiffs' motion to bar reference to contacts by witnesses with counsel; this is an appropriate topic for examination and argument.

### Conclusion

For the reasons stated above, the Court grants plaintiffs' and defendants' motions *in limine* in part, denies them in part, and defers them in part for further argument [docket nos. 357, 359, 364].  The Court terminates, based upon previous rulings in open court, defendants' motion to bar untimely disclosed class

16

representatives or continue the trial date [docket no. 336] and terminates as moot defendants' motion for miscellaneous relief [docket no. 328].

MATTHEW F. KENNELLY
United States District Judge

Date:  July 27, 2009

17