# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHAUNTE OTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:09-cv-00870-RTR |
| ) | |
| CITY OF MILWAUKEE, et al. ) | |
| ) | |
| ) | |
| Defendants. ) | JURY TRIAL DEMANDED |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' *DAUBERT* MOTIONS *IN LIMINE* NOS. 12 & 13

NOW COMES, Plaintiff Chaunte Ott, by and through his counsel, LOEVY & LOEVY, and responds in opposition to Defendants' Motions *In Limine* Nos. 12 & 13, seeking to bar the expert testimony of Dennis Waller and Deana Lankford. For the reasons explained below, Plaintiff respectfully requests that the Court deny Defendants' motions.

### I. Defendants' Motion *In Limine* No. 13 To Exclude Deanna Lankford's Testimony Should Be Denied

Conceding Ms. Lankford's credentials as a scientist and the appropriateness of her methodology, Defendants' motion raises two objections: (a) purported cumulativeness; and (b) the (incorrect) contention that she supposedly intends to testify that Ellis was the "true perpetrator" of Payne's homicide and that "Chaunte Ott was wrongfully convicted." Defendants are wrong on both counts.

First, Plaintiff clarifies that he has no intention of attempting to call multiple experts on the same issues. That said, Plaintiff is not required to rely on the testimony of State Crime Laboratory employees; Ms. Lankford is equally qualified to interpret the scientific reports, and in at least a few places her report goes further than the technicians (e.g., comments on the reliability of certain testing).

*See* Declaration of Heather Lewis Donnell ("Donnell Decl."), Exhibit 6 (Lankford Declaration) at ¶¶5-11. Moreover, to the extent Defendants raise foundation objections during Ms. Lankford's testimony (which seems unlikely), the State Crime Laboratory employees may be able to supply one. At best, Defendants' cumulativeness objection is premature.

Second, Plaintiff also has no intention of eliciting from Ms. Lankford her opinion that Ellis is the "true perpetrator" or that Ott was wrongfully convicted. Ms. Lankford has no personal knowledge of either subject, and will (and can only) talk about the significance and meaning of the scientific evidence as it bears on those questions. Specifically, drawing on her specialized knowledge, she will explain to the lay jurors the DNA evidence and the degree of reasonable scientific certainty to which the DNA evidence excludes Ott as the perpetrator of the Payne homicide and inculpates Mr. Ellis. Defendants have failed to justify barring these opinions.

## II. Defendants' Motion *in Limine* No. 12 To Exclude Portions Of Dennis Waller's Testimony Should Be Denied

Just as was true in *Avery v. City of Milwaukee,* No. 11 C 408 (E.D. Wis.), the Milwaukee Defendants have misconstrued the opinions of police practices expert Dennis Waller and their connection to this case. *See Avery v. City of Milwaukee,* No. 11 CV 408 (E.D. Wis.) [hereinafter "*Avery* Order"] at 3 ("The defendants divide Waller's testimony into eleven discrete pieces, arguing that each piece is not based on specialized knowledge that would assist the trier of fact. In so doing, the defendants sidestep the actual import of Waller's proposed testimony. Waller's opinions focus on whether the defendants' conduct in their investigation of the Griffin homicide deviated from proper investigative procedures, as well as the policies and practices of the Milwaukee Police Department of inadequately conducting homicide investigations. . . ."). For the reasons similar to those in *Avery,* Plaintiff respectfully requests that the Court deny Defendants' motion to bar certain portions of Mr.

Waller's testimony. *See Jiminez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (approving the use of police practices testimony to assist the jury).

### A. Waller is Not Opining Based on Psychology or Polygraphy

The Defendants first seek to exclude any testimony by Waller on his opinions that are based on psychology or "in the area of polygraphy." Dckt. 189 at 20. It is difficult to understand this argument since Waller neither opines about psychology nor about polygraphy. In making such assertions, the Defendants have taken citations in Waller's report wildly out of context.

First, Waller is not offering any opinion based on psychology. To the contrary, he is simply referencing a psychology textbook, which explains factors that may make someone susceptible to a false confession, in his six-page opinion regarding improprieties in the manner in which Sam Hadaway's confession was taken. *See* Donnell Decl., Exhibit 1 (Waller Report) at 8-14. The ultimate opinion that Waller offers, and which the Defendants do not challenge, is about law enforcement practices; namely that "providing an easily intimidated witness or suspect with specific information about a crime and then threatening that person with life imprisonment unless they implicate another party is inconsistent with the proper determination of the truth about what happened." *Id*. at 8. That Waller referenced a psychology textbook during his discussion, among many other manuals and guides, does not alter the admissibility of that opinion.

Indeed, it is entirely permissible and common practice for an expert to rely on materials that an expert in his or her field would ordinarily rely on: A psychology textbook about false confessions - a known problem facing law enforcement - is just such a material. *See Cooper v. Carl A. Nelson & Co.,* 211 F.3d 1008, 1020 (7th Cir. 2000) ("Rule 703 of the Federal Rules of Evidence explicitly permits reliance on material 'reasonably relied upon by experts in the particular field in forming opinions or

3

inferences.' Fed. R. Evid. 703. Our case law has recognized that experts in various fields may properly rely on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion."); *In re Snider Farms,* Inc., 83 B.R. 977, 984 (N.D. Ind. 1988) ("It is also been held that it is reasonable for experts to rely on the opinion of experts in other fields as background material for arriving at an opinion."). To that end, a number of law enforcement texts cited throughout Waller's opinion - the *Reid Report*, *The Investigator's Anthology* and *Criminal Interrogations and Confessions* - state the exact same thing as the psychology text of which the Defendants complain. That is, that people who are young and suffer from mental or physical impairments are more susceptible to false confessions. Donnell Decl., Exhibit 1 (Waller Report) at 10-11. As such, Waller is not offering an opinion based on psychology or one that is outside his area of expertise, and there is no reason to exclude it.[1]

Similarly, Waller has not offered an opinion on polygraphy. The Defendants cite to page 29 of Waller's report for such a proposition but all that page 29 states is that '[q]uestions related to the

---

[1] For similar reasons, another judge rejected the same objection to Mr. Waller's testimony in another case:

> Mount Prospect argues that Waller is not competent to testify because he is not qualified in medicine or the medical care of pre-trial detainees and has "never been accepted by a judge as having expertise in the area of medical needs of a pre-trial detainee." While Mount Prospect is correct that Waller would not be qualified to testify as to his medical opinions regarding this case, his testimony is not offered for that purpose. According to Plaintiff, Waller will testify as to the purpose and importance of procedures. He will discuss typical police procedures as well as CALEA standards, and he will testify as to proper police response to established medical needs. In addition, he will describe what defendants should have and could have done to avoid Fitzgibbons' death. We find that Waller is qualified to testify to such matters. Mount Prospect's concerns with respect to Waller's testimony go to the weight the jury should give his testimony, not to its admissibility. Mount Prospect can address such issues on cross examination and in closing arguments.

*Egebergh v. Sheahan,* No. 96 C 5863, 2001 WL 15945, at *10 (N.D. Ill. Jan. 4, 2001).

context of a sexual assault were asked of Hadaway when he was given a polygraph." *Id.* at 29. Waller's report then lists the questions asked of Hadaway and states that this line of questioning shows that the Defendants knew or should have known that there was a sexual assault component to the Payne homicide. As a result, the Defendants also knew or should have known that the Payne homicide may have linked to other "similar homicides which occurred in the area." *Id.* As a police practices expert, it is proper for Waller to have reviewed the police reports produced during this litigation, including the polygraph report. Those are the types of materials on which police officers and police practices experts ordinarily rely. *See Cooper,* 211 F.3d at 1020; *In re Snider Farms,* Inc., 83 B.R. at 984.

### B. No Basis Exists to Exclude Waller's Opinions Because of Reference to Materials that Post-Date The Investigation of Plaintiff's Prosecution

Defendants also seek to exclude opinions based on texts that post-date the 1995 Payne investigation and 1996 wrongful prosecution of Ott. According to the Defendants, "[a]kin to advances in medicine or science, advances in police or investigative practices may make conduct that occurred years before those advances appear to be inappropriate," and as such, Waller should be barred from offering opinions that rely on such advances. Dckt No. 189 at 21.

As an initial matter, even a cursory review of Waller's 37-page expert report makes plain that there is no single text or texts on which he relied for his opinion. Rather, it is the combination of nearly 30 years in law enforcement, including as an officer and instructor as well as his degrees in police administration (B.A. and M.S.) that inform each of his opinions. *See Avery* Order, at 3-4 ("Waller has a bachelor of science degree in police administration from Michigan State University and a master of science degree in public administration from Florida International University. His training and experience as an officer and instructor is extensive. He has served as a consultant/expert witness

5

related to police policy, procedure and practice in more than 600 cases in 35 states and a variety of judicial venues over a 26-year period. Therefore, he is qualified as an expert by his knowledge, skill, experience, training and education. Moreover, Waller's methodology is reliable and sound because it is based on his specialized knowledge of law enforcement procedures.").

Moreover, and perhaps more importantly, the Defendants have identified no "advances in police or investigative practices" that makes Waller's references to the disputed texts inappropriate. Indeed, the bulk of the Defendants' objection is to texts that discuss interrogations, but all those manuals articulate relevant to Waller's opinions and this litigation is that (1) a police detective must be careful when interrogating a vulnerable witness or suspect - e.g., who is mentally or physically handicapped and (2) a police detective should corroborate any statements given by such a vulnerable witness. Dckt. 189 at 21; Donnell Decl., Exhibit 1 (Waller Report) at 9-12. These standards were well-entrenched prior to 1995 and 1996; were there any doubt, Waller cites a 1987 text that states the same thing. *Id.* at 12.

Defendants obviously remain welcome to cross-examine Waller about the standards he applied and sources on which he relied for his opinions at trial, but there is nothing in his occasional reference to a background text that may have post-dated the incident that warrants excluding his opinions.[2]

---

[2] Indeed, to the extent that Waller's opinions relate to the City's policies and practices (and as such, to Plaintiff's *Monell* claim) reference to current standards is actually appropriate. That is because the law applicable to a *Monell* claim is not the law at the time of the events giving rise to the claim but rather the law at the time the complaint was filed. As *Barber v. City of Salem,* 953 F.2d 232, 237 (6th Cir. 1992) explains "a municipality may . . . be liable if the actions complained of rise to the level of constitutional violations in light of present law." *Id.* (emphasis added); *see also Haley v. City of Boston,* 657 F.3d 39, 52 (1st Cir. 2011) ("First, under current law (which applies to *Monell*-type claims), it is clear that the disclosure obligation imposed by Brady extends to evidence known to only police officers . . . .").

6

### C.     Waller's Opinions Based on Testimony by Latonia Cooper is Relevant

Defendants also seek to exclude any testimony by Waller about the failure to follow up on the information Latonia Cooper provided the Defendants about Walter Ellis because it purportedly touches upon officers not named as defendants in this case. Dckt. 189 at 21-22. That argument misses the mark.

According to the Defendants, Waller's opinion on this topic is "speculative" because "Cooper could have been interviewed by an officer not a defendant herein and that officer could have failed to include information about Ellis in the report he prepared and never disclosed that information to the named detectives." Dckt. 189 at 22. The Defendants, however, made this very same argument during summary judgment briefing and this Court rightly rejected it:

> The evidence establishes that DeValkenaere interviewed Cooper and that he and Buschmann were the primary detectives in the Payne investigation. As the primary detectives, DeValkenaere and Buschmann should have been aware of all the information gathered during the investigation, including exculpatory information.

*Ott v. City of Milwuakee,* -- F. Supp. 3d --, 2014 WL 4715952, at *8 (E.D. Wis. Sept. 19, 2014). Based on the evidence in the record and expected at trial, it is the Defendants' claim that a non-defendant detective was responsible for the Cooper interview and attendant withholding of information that is speculative.

But even if that were not the case, Waller's testimony about the failure to follow-up on and disclose the information that Cooper provided about Ellis would still be relevant. That is because Plaintiff has a *Monell* claim based on that very failure. As a result, even if Cooper was not interrogated by DeValkenaere and Buschmann -- and even if DeValkenaere and Buschmann never learned of the information that Cooper provided about Ellis -- the City still could be on the hook if Plaintiff can prove that another Milwaukee police officer interviewed Cooper and failed to disclose to the prosecutor the

7

information that she provided to the police about Ellis.

On that score, *Thomas v. Cook County Sheriff's Department,* is instructive:

> The County, in this case, appears to push for a rule that requires individual officer liability before a municipality can ever be held liable for damages under *Monell*. This is an unreasonable extension of *Heller*. What if the plaintiff here had only sued the County, or didn't know, because of some breakdown in recording shifts, who the CMTs on duty were? The actual rule, as we interpret it, is much narrower: a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict.

604 F.3d 293, 305 (7th Cir. 2010) (emphasis in original); *see also Ott v. City of Milwaukee,* No. 09-C-870, 2010 WL 5095305, at *2 (E.D. Wis. Dec. 8, 2010) (quoting *Thomas*); *Flores v. Walgreen Co.,* No. 09 C 7419, 2010 WL 3894091, at *9 (N.D. Ill. Sep. 30, 2010); *Cage v. City of Chicago,* No. 09 C 3078, 2010 WL 3613981, at *2 (N.D. Ill. Sep. 8, 2010); *Terry v. Cook County Dept. of Corr.,* No. 09 C 3093 (N.D. Ill. July 8, 2010); *Bell v. City of Chicago,* No. 09 C 4537, 2010 WL 432310, at *2 (N.D. Ill. Feb 3, 2010); *Bradley v. City of Chicago,* No. 09 C 4538, 2010 WL 432313, at *2 (N.D. Ill. Feb. 3, 2010). Because the City can be held liable under *Monell* even if DeValkenaere and Buschmann are not, Waller's opinions about the failure to follow up on Cooper's information is relevant and admissible.

### D. Waller's Opinion About the Failure to Investigate Ellis in 1995 is Admissible

The Defendants similarly misconstrue Waller's opinions regarding the Defendants' failure to investigate Ellis in 1995. According to the Defendants, Waller argues that the Defendants should have followed up on Ellis in 1995 based in part upon the subsequent DNA evidence linking Ellis to Payne. Dckt. 189 at 22. That is not a fair reading of Waller's opinion or his expected testimony.

To the contrary, Waller opines only that based on what was known to the Defendants in 1995, the Defendants should have tried to link Payne to the other unsolved homicides involving sexual

8

assaults; and that based on information provided by Cooper, Ellis in particular should have been explored as a possible suspect. Donnell Decl., Exhibit 1 (Waller Report) at 27 ("Despite obvious indications that Ms. Payne had been the victim of a sexual assault, inexplicably Detectives Buschmann . . . and DeValkenaere . . . asserted that they did not believe, or consider that Ms. Payne had been sexually assaulted. Their contention appears to be in conflict with the physical evidence, common sense and investigative protocols."); *id.* at 28 ("Other homicides, some obviously accompanied by sexual assaults, had occurred in the vicinity where Jessica Payne's body was found. If properly considered they could have, and eventually did, provide a link to the suspect."); *id.* at 29-30 (should have followed up on evidence provided by Cooper).

The quote Defendants took from Waller's report that "the information [from Cooper] linking Ellis to Payne and the subsequent evidence linking the DNA to the same perpetrator of the Mims homicide should have required further investigation" does not - by its very own language - suggest that the Defendants should have followed up on DNA testing in 1995. Rather, in 1995, the Defendants should have followed up on the information provided by Cooper; in 2003, when the DNA results linked an unknown DNA profile found in Payne to unknown DNA profile found in Mims (which was not Ott's DNA profile), that too should have been further explored.

Waller further describes the DNA results that linked the Payne and other homicides to Ellis in an effort to show that had the Defendants followed up on the information that Cooper provided and the connection between the various north side sexual assault- homicides, the Defendants investigation may have led to the correct offender. As such, and contrary to the Defendants' argument, Waller is not opining on whether the Defendants should have done DNA testing in 1995 or that the DNA testing conducted in 1996 (which excluded Ott) was somehow deficient.

9

Indeed, the fact that the DNA from the Payne homicide ultimately was linked to Ellis (as well as nine other sexual assault-homicides) simply underscores the materiality of the evidence provided by Cooper and withheld by the Defendants. That is a proper arena for Waller to provide testimony. *Cf. Goldberg v. 401 North Wabash Venture, LLC,* No. 09 C 6455, 2012 WL 3686644, at *5 (N.D. Ill. Aug. 24, 2012) ("The question of materiality in this case arises out of a complex commercial real estate transaction between two sophisticated parties for the purchase and sale of hotel condominium units in a luxury high-rise . . . Mr. Levin's testimony will assist the jury with these issues."). As such, there is absolutely no basis on which to exclude Waller's testimony.

### E. Waller's Opinions About Defendants' Failure To Investigate That Payne Was Sexually Assaulted Is Admissible

Defendants yet again misconstrue Waller's opinion. In the portion of his opinion that Defendants take issue with, Waller is opining about how Defendants DeValkenaere and Buschmann did not believe Payne had been sexually assaulted and in doing so they ignored the obvious evidence to the contrary, including the high concentration of seminal fluid obtained near her vaginal area, the fact that her pants were pulled down and her bra was torn exposing her breasts, and that Payne had bruising on her body. Donnell Decl., Exhibit 1 (Waller Report) at 27-28. As a result, DeValkenaere and Buschmann failed to view the Payne homicide as a violent sexual assault and as a result failed to make any attempt to link it to other unsolved female sexual assault homicides. Detectives Buschmann and DeValkenaere failed to "consider, refused to consider, or recklessly neglected to consider the similarities between Jessica Payne's death and the murder of other women in the vicinity." *Id.* at 28. This opinion is within Waller's expertise as a police practices expert and admissible.

Defendants' only argument with respect to this aspect of Waller's opinion is that it will "not help the trier of fact to understand the evidence or to determine a fact in issue." Dckt. 189 at 23

(quoting Rule 702(a)). Defendants are wrong. Waller's testimony that DeValkenaere and Buschmann ignored key evidence that Payne was sexually assaulted is relevant to Plaintiff's claim that Defendants honed in on Ott as their guy and manufactured evidence against him (Hadaway and Gwin false statements) while ignoring other key evidence in the case like that Payne was sexually assaulted and that Cooper told the police and DeValkenaere that Ellis was with Payne near the time of her murder.

In arguing that "it would be nothing but speculation" back in 1995 that the unsolved female homicides may be linked to a single perpetrator, Defendants' motion also ignores evidence in the record. Dckt. 189 at 23. For example, in 1995, Detective Eric Moore was tasked with the job of evaluating all the unsolved female homicides that may have evidence suitable for DNA testing. *See* Dckt. 172 (Plaintiff's Proposed Statement of Additional Facts) at ¶¶38-39. On January 9, 1996, Detective More submitted his report to MPD. *Id.* at ¶39. Payne was included on that list as were four other homicide victims who were ultimately linked to Walter Ellis (Tanya Miller murdered 10/11/1986, Debra Harris murdered 4/14/1990, Florence McCormick murdered 4/24/1995, Shelia Farrior murdered 6/27/1995) and for which Ellis was convicted. *Id.* at ¶39 & Exhibit 24 (Moore Report) and *Id.* at Exhibit 26 (Walter Ellis Amended Criminal Complaint) at Counts 3-4 & 6-7.

In addition, Detective Daniel Phillips, who was disclosed as a witness in this case, *see* Plaintiff's Second Supplemental Rule 26(a)(1) disclosures, attached to Donnell Decl. as Exhibit 7, testified at his deposition in the *Avery* case that he recalled receiving briefings and memoranda from the Milwaukee Police Department that identified various unsolved female homicide cases that may be linked to a common perpetrator. Dckt. 172 at¶38 & Exhibit 23 (Excerpts of Daniel Phillips Deposition in *Avery v. City of Milwaukee, et al.*, No. 11 C 404 (E.D. Wis.).

Waller's testimony that Defendants ignored key physical evidence that Payne was sexually

assaulted and that to do so violated their professional standards is squarely within in Waller's expertise and the parameters of admissible expert testimony. *See, e.g., Richman v. Sheahan*, 415 F. Supp. 2d 929, 945 (N.D. Ill. 2006) ("There is no doubt that under Rules 702 and 704 an expert may testify about applicable professional standards and the defendants' performance in light of those standards"). Accordingly, the Court should not exclude it from this trial.

### F. Waller's Opinion That Defendants Investigation of the Payne Homicide Also Failed to Attempt to Link Ott, Hadaway or Gwin to Nearby Homicides Is Admissible

Waller further opined that had Defendants properly considered the Payne homicide as also involving a sexual assault, they should have made some effort to link their suspects (Ott, Hadaway, Gwin) to the other unsolved female homicides in the geographic vicinity. See Donnell Decl., Exhibit 1 (Waller Report) at 30. There is no evidence in the record that they made any attempt to do so.

Contrary to the Defendants' contention, Waller's opinion with respect to this issue is not based on "speculation," dckt. 189 at 24, but rather on his extensive experience in law enforcement, coupled with the actual evidence that Payne was sexually assaulted, which DeValkenaere and Buschmann opted to ignore for no explicable reason. This opinion testimony is admissible expert testimony. *See Richman,* 415 F. Supp. 2d at 945.

Again, Defendants claim that this opinion should be excluded because it will not assist the trier of fact, but this portion of Waller's opinion goes directly to explaining the manner in which Defendants conducted Payne homicide investigation and their failure to abide by expected standards of their profession in doing so. This evidence is relevant to Plaintiff's theory of the case that Defendants' short-circuited the criminal investigation by manufacturing false witness statements to pin the murder on Ott

and ignoring other evidence, including physical evidence suggesting that Payne had been sexually assaulted.

To be clear, Waller is not opining, as Defendants have argued, that had the Defendants taken the step of seeking the connection of Payne to the other unsolved female homicides that they would have linked all the cases to Ellis back in 1995. Rather, he is opining about how Defendants' investigation failed to comply with the standards of practice of their profession in ignoring and investigating key evidence in the Payne homicide. *See Jiminez*, 732 F.3d 710 at 722. ("McCrary testified about the steps a reasonable police investigator would have taken to solve the Morro murder, as well as the information that a reasonable police investigator would have taken into account as the investigation progressed. He did not try to resolve conflicts in the testimony of different witnesses. He also did not offer an opinion regarding whether the police had probable cause to arrest Jimenez. He did point out ways in which evidence from other witnesses indicated that Bogucki and his police colleagues departed from reasonable investigation methods . . . McCrary's testimony thus would have helped the jury conclude that the departures from reasonable police practices were so important, severe, and numerous that they supported an inference that Bogucki acted deliberately to violate Jimenez's rights.").

### G. Waller's Summary Of His Opinions On The Payne Investigation Are Admissible

Finally, Defendants seek to exclude the summary of Waller's opinions found on pages 31-37 of his report. *See* Dckt. 189 at 24. Again, Defendants have misinterpreted the import of his opinions found on these pages by misconstruing his opinion as a non-existent *Monell* claim related to flawed investigations. Rather, Waller's statements on pages 31 to 37 of his report simply summarize his opinions on the Payne investigation, including: (1) DeValkenaere and Buschmann's handling to of

13

Ientha Walker, the jailhouse informant; (2) Defendants' focus only on evidence that supported their theory of the crime to the exclusion of all other evidence (i.e. Payne had been sexually assaulted); (3) Defendants' decision to ignore Cooper's statement to police linking Ellis to Payne; and (4) the MPD's pressure to close homicide cases to support their reported statistics relying on former Chief Hegerty's testimony as well as Burems' complaint. Donnell Decl., Exhibit 1 (Waller Report) at 31-37. These are legitimate subjects for police practices testimony. Mr. Ott is not a police officer, and he cannot himself (nor can any of his other fact witnesses) rebut Defendants' insistence that everything they described is "by the book." That is why courts permit police practices testimony: where appropriate, experienced experts in the field can provide the jury another perspective. *See Jiminez*, 732 F.3d at 722. The thrust of Defendants' objections is best handled on cross-examination, not through a motion to bar.

## Conclusion

For the reasons explained above, the Court should deny Defendants' Motions *In Limine* Nos. 12 and 13 seeking to bar the testimony of Dennis Waller and Deana Lankford.

RESPECTFULLY SUBMITTED,

/s/ Jon Loevy
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Gayle Horn
Heather Lewis Donnell
Elliot Slosar
LOEVY & LOEVY
312 North May, Suite 100
Chicago, IL 60607
(312) 243-5900

# **CERTIFICATE OF SERVICE**

I, Jon Loevy, an attorney, certify that on February 17, 2015, I filed a copy of the attached Plaintiff's Response To Defendants' *Daubert* Motions *In Limine* via the Court's CM/ECF filing system and thereby caused a copy of the same to be served on all counsel of record.

/s/ Jon Loevy