# EXHIBIT 2

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WILLIAM DAMON AVERY, et al.,**

    Plaintiffs,

-vs-                                                                       Case No. 11-C-408

**CITY OF MILWAUKEE, et al.,**

    Defendants.

## DECISION AND ORDER

The plaintiff, William Damon Avery, alleges that certain City of Milwaukee police detectives framed him for the murder of Maryetta Griffin. Avery was exonerated after spending six years in prison when DNA testing excluded Avery and matched the profile of Walter E. Ellis, an accused serial killer. For more background on this case, see the Court's Decision and Order granting-in-part and denying-in-part the defendants' motion for summary judgment. --- F. Supp. 2d ----, 2014 WL 4100748 (E.D. Wis. Aug. 18, 2014).

Now before the Court are several motions in limine. At the time those motions were filed, the trial of this matter was scheduled to commence on January 20, 2015. However, on January 7, Avery discovered that one his expert witnesses, Deanna Lankford of Cellmark Forensics,

was scheduled for non-elective surgery on January 20 and would be unable to attend Avery's trial. Thus, Avery filed an expedited motion to admit certain evidence at trial or to amend the pretrial report. The purpose of this motion was to offer alternatives to account for Ms. Lankford's absence at trial. Avery's proposals were not acceptable to the defendants, nor to the Court. Therefore, the Court accepted Avery's backup suggestion to adjourn the trial (defendants did not oppose the request for an adjournment). The motions in limine remain pending, and they are discussed herein.

## Defendants' motions

### I. Expert opinion or testimony by Dennis Waller

Avery proffered Dennis Waller as an expert on police practices. Rule 702 of the Federal Rules of Evidence requires the Court to perform a "gatekeeping" function before admitting expert testimony in order to ensure that such testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The Court must make the following inquiries: first, the expert must be qualified by knowledge, skill, experience, training, or education; second, the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert

must have reliably applied the principles and methods to the facts of the case. *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013).

The defendants divide Waller's testimony into eleven discrete pieces, arguing that each piece is not based on specialized knowledge that would assist the trier of fact. In so doing, the defendants sidestep the actual import of Waller's proposed testimony. Waller's opinions focus on whether the defendants' conduct in their investigation of the Griffin homicide deviated from proper investigative procedures, as well as the policies and practices of the Milwaukee Police Department of inadequately conducting homicide investigations and improperly using jailhouse informants. This testimony, based on Waller's specialized knowledge of police administration and police practices, will obviously assist the trier of fact in resolving the claims in this case. *Richman v. Sheahan*, 415 F. Supp. 2d 929, 945 (N.D. Ill. 2006) ("There is no doubt that under Rules 702 and 704 an expert may testify about applicable professional standards and the defendants' performance in light of those standards").

The defendants do not address any of the other *Daubert* factors. All of them are satisfied in the instant case. Waller has a bachelor of science degree in police administration from Michigan State University and a master of science degree in public administration from Florida

International University. His training and experience as an officer and instructor is extensive. He has served as a consultant/expert witness related to police policy, procedure and practice in more than 600 cases in 35 states and a variety of judicial venues over a 26 year period. Therefore, he is qualified as an expert by his knowledge, skill, experience, training and education. Moreover, Waller's methodology is reliable and sound because it is based on his specialized knowledge of law enforcement procedures. *Jimenez v. City of Chi.*, 732 F.3d 710, 721 (7th Cir. 2013); *Tomas v. Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) ("An expert may certainly rely on his experience in making conclusions, particularly in this context where an expert is asked to opine about police behavior").

Waller's testimony is admissible.

## II. Evidence or argument regarding any claim by William Damon Avery's children for loss of society and companionship

Avery's children are named as plaintiffs in this case, but they are currently unrepresented and are not actively pursuing their claims in this case. Consequently, Avery agrees that he will not introduce evidence of his children's claims for lost society, companionship and care. However, this does not preclude Avery from introducing evidence that relates to *his* relationship with his children and how he was damaged by being

- 4 -

incarcerated.

**III. Evidence or argument regarding any complaints of misconduct or regarding any discipline of any defendant officer**

Avery agrees that he will not introduce evidence of unrelated complaints or discipline of the defendants pursuant to Rule 404(b) or any other evidentiary rule.

**IV. Testimony from Detective Ricky Burems and evidence or argument regarding a complaint he made concerning certain matters arising from the investigation of the Debra Maniece homicide**

Detective Ricky Burems filed a complaint in January 2007 with the Milwaukee Fire and Police Commission concerning the manner in which the Milwaukee Police Department was conducting investigations, especially in relation to cold cases. Defendants argue that this evidence is irrelevant. Clearly it isn't. This is relevant information related to the alleged pattern and practice of the Milwaukee Police Department in conducting homicide investigations.

**V. The State of Wisconsin Claims Board's Decision Pertaining to Avery**

Defendants move to bar any mention of the State of Wisconsin Claims Board's decision, after a hearing, which found that Avery provided clear and convincing evidence that he was innocent of the crime for which

- 5 -

Case 2:11-cv-00408-RTR   Filed 01/20/15   Page 5 of 13   Document 109

he was convicted and did not, by his act or failure to act, contribute to his conviction. Defendants do not make a hearsay objection, and as Avery observes, Rule 803(8) specifically exempts hearsay documents identified as public records or reports.

Instead, defendants argue that this evidence is irrelevant because it does not implicate any of the individual defendants, and the issues resolved by the Claims Board are not the same as those at issue in this lawsuit. As Avery explains, defendants will likely attempt to argue that Avery may actually be guilty of the Griffin homicide. This evidence counters that line of argument.

Defendants also argue that even if the evidence is relevant, its relevance is outweighed by the danger of unfair prejudice because the jury would likely be "sensitive" to the Board's determination and would give its ruling improper weight. The jury will be properly instructed on the law, making clear that the Board's decision is simply another piece of evidence to weigh when applying that law. The Court is not convinced that the probative value of this evidence is outweighed by any danger of unfair prejudice. Fed. R. Evid. 403.

**VI. The prefix "Ellis" from any bate stamp on documents offered as exhibits at trial**

Avery agrees that he will not introduce exhibits containing the prefix "Ellis."

## VII. Antron Kent's deposition testimony

Defendants seek to preclude the use of Antron Kent's deposition testimony at trial. A deposition can be used in lieu of live testimony if the Court finds (A) that the witness is dead; (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition; (C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment; (D) that the party offering the deposition could not procure the witness's attendance by subpoena; or (E) on motion and notice, that exceptional circumstances make it desirable – in the interest of justice and with due regard to the importance of live testimony in open court – to permit the deposition to be used. Fed. R. Civ. P. 32(a)(4).

Kent is currently an inmate at Oakhill Correctional Facility in Oregon Wisconsin, 89.2 miles from the federal courthouse in Milwaukee. This eliminates part (B). Kent's incarceration, standing alone, doesn't mean that he cannot testify. *Ueland v. United States*, 291 F.3d 993, 996 (7th Cir. 2002) ("Only if imprisonment makes the witness 'unable' to attend

does subsection [](C) authorize the deposition's use"). Defendants claim there is no reason for Avery not to petition for a writ of habeas corpus ad testificandum to secure Kent's presence at trial. To the contrary, Kent would, as he has in the past, invoke his Fifth Amendment privilege against self-incrimination if called to testify at trial.

Therefore, the Court finds that there are exceptional circumstances which justify the use of Kent's deposition at trial. Rule 32(a)(4)(E). Defendants emphasize the importance of live testimony because Kent's credibility is at issue. As the Court explained in its summary judgment order, Avery alleges that the defendants used three jailhouse informants to testify against Avery at his trial: Kent, Keith Randolph, and Jeffrey Kimbrough. All three of them tell the same basic story: that they were coached by the defendants to testify that Avery confessed to the Griffin murder. Their credibility would seem to rise and fall together, so the Court does not think it is important that they all offer live testimony.[1]

## VIII. Testimony or evidence pertaining to Detective James DeValkenaere as a defendant in another matter, specifically *Ott v. City of Milwaukee, et al.*

Avery agrees not to make any reference to DeValkenaere's status as

---

[1] On December 15, the Court granted Avery's motion to preserve Randolph's testimony by video deposition. Kimbrough will offer live testimony.

a defendant in any other case. The Court agrees with Avery's qualification that he should be allowed to introduce evidence regarding DeValkenaere's conduct in other homicide investigations, including the investigation of the Jessica Payne homicide, without referring to him having been sued in relation to that investigation.

## Plaintiff's motions

### I. Barring reference to plaintiff's prior arrests, warrants for his arrest, convictions, and periods of incarceration

Defendants contest this motion only to the extent that Avery wants to bar reference to his open warrants at the time he was being questioned during the Griffin investigation. Avery argues that the fact he was held on open warrants after he voluntarily went in for questioning is not relevant to any issue in this case, and it would invite the jury to speculate about the offenses underlying the warrants and how they would be resolved. On the other hand, defendants argue that the jury should know about the open warrants because those warrants provided justification to hold Avery after the initial interview. Without justification, jury speculation might undermine the credibility of the defendants.

The Court agrees that the jury should be allowed to hear evidence that Avery was held on "open warrants." The jury can and will be

- 9 -

instructed that they must not speculate or guess about the offenses underlying the warrants.

## II. Plaintiff's child support obligations

Avery moves to preclude evidence that he owed and still owes child support. Defendants argue that this evidence is relevant because a parent who fails to assume parental responsibility suffers less of a "companionship" loss than one who takes full responsibility for their children. The Court agrees that this evidence is relevant, and its relevance is not outweighed by the danger of unfair prejudice. Avery can, of course, counter this evidence by explaining why he was unable to meet his support obligations.

## III. Certain hearsay exhibits as substantive evidence

Avery objects to the admission of police reports summarizing interviews with third parties and notes contained in police memo books, arguing that these documents are inadmissible hearsay. Police reports are generally excluded as hearsay "'except to the extent to which they incorporate firsthand observations of the officer.' This is because the presumption of reliability that serves as the premise for the public-records exception does not attach to third parties who themselves have no public duty to report." *Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013)

- 10 -

(discussing Fed. R. Evid. 803(8)). Assuming that an appropriate foundation is laid, police memo books should similarly fall within the public records exception, if not the exception set forth in Rule 803(6) (Records of a Regularly Conducted Activity). Regarding third-party statements, defendants are not offering those statements to prove the truth of the matter asserted. Fed. R. Evid. 801. Instead, the statements are offered to prove that they were made to certain police detectives, illustrating how and why the Avery investigation began and progressed. *United States v. Lazcano*, 881 F.2d 402, 407 (7th Cir. 1989) ("an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken").

## IV. Unopposed motions

The plaintiff filed eight additional motions, numbered 4-11, all of which are unopposed. They are granted as follows:

Number four: barring all non-party witnesses from the trial.

Number five: barring any reference to plaintiff's counsel as being from "out-of-town."

Number six: barring any reference to plaintiff's prior counsel.

Number seven: barring any reference to plaintiff or any witnesses being affiliated with a gang.

Number eight: barring any reference to jurors as taxpayers or taxpayers footing the bill.

Number nine: barring any reference to defendants' commendations and awards.

Number ten: barring any reference to police officer being a dangerous job.

Number eleven: barring any reference to any alleged results, findings or conclusions regarding plaintiff taking a polygraph examination in 1998, including that plaintiff voluntarily submitted to the polygraph examination. Accordingly, the testimony of polygrapher Robert Simons is barred, and Simons' polygraph report may not be used as an exhibit.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Avery's motion to adjourn the trial [ECF No. 107] is **GRANTED**. In all other respects, this motion is **DENIED**;

2. Defendants' motions in limine [ECF No. 94] are **GRANTED-IN-PART** and **DENIED-IN-PART**;

3. Plaintiff's motion in limine number one [ECF No. 98] is **GRANTED-IN-PART** and **DENIED-IN-PART**;

4. Plaintiff's motion in limine number two [ECF No. 99] is

**DENIED**;

      5.     Plaintiff's motion in limine number three [ECF No. 100] is **DENIED**;

      6.     Plaintiffs' unopposed motions in limine Nos. 4-11 [ECF No. 101] are **GRANTED**.

      Dated at Milwaukee, Wisconsin, this 20th day of January, 2015.

                                   **BY THE COURT:**

                                   *[signature: Rudolph T. Randa]*

                                   **HON. RUDOLPH T. RANDA**
                                   **U.S. District Judge**

- 13 -

Case 2:11-cv-00408-RTR   Filed 01/20/15   Page 13 of 13   Document 109