# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN,
MILWAUKEE DIVISION

| | | |
|---|---|---|
| CHAUNTE OTT, | ) | |
| | ) | |
| Plaintiff, | ) | 09 CV 00870-RTR |
| | ) | |
| vs. | ) | |
| | ) | Judge Rudolph T. Randa |
| CITY OF MILWAUKEE, Former Milwaukee | ) | |
| Police Department Chiefs ARTHUR L. JONES | ) | |
| and NANETTE H. HEGARTY, as well as Present | ) | |
| and Former Detectives CARL BUSCHMANN, | ) | |
| JAMES DEVALKENAERE, ROBERT SIMON, | ) | |
| ERIC MOORE, RICKY BUREMS, PERCY | ) | |
| MOORE, MICHAEL DUBIS, and OTHER | ) | |
| AS-OF-YET UNKNOWN EMPLOYEES OF | ) | |
| THE CITY OF MILWAUKEE, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## AFFIDAVIT OF DEANNA D. LANKFORD

Now comes the affiant, Deanna D. Lankford and affirms under oath the following, which is true to the best of my knowledge, information, and belief.

1. I am a Forensic DNA Analyst specializing in serological and DNA analysis methods. My business address is Cellmark Forensics, 13988 Diplomat Drive, Suite 100, Dallas, TX 75234.

2. I possess a Bachelors of Science degree in Medical Technology from Middle Tennessee State University and a certificate from Saint Thomas School of Medical Technology. I maintain a Tennessee state license and national certification through the American Society for Clinical Pathology.

3. I have been employed as the Associate Laboratory Director for Cellmark Forensics with the Forensic Serology and DNA Analysis unit for approximately 3 years. Prior to that, I worked as the Forensic Laboratory Manager in our Nashville forensic facility for approximately 4 years. I began my experience in DNA testing in the same Nashville facility in 1996. A copy of my curriculum vitae is attached hereto as Exhibit A.

4. I have given expert testimony and been qualified as an expert in the field of Forensic Serology and DNA testing in many different states.

### Background Information on DNA Analysis

5. DNA, or deoxyribonucleic acid, is the basic building block of all living things. It is found in all nucleated cells in the human body. Half of your DNA is inherited from your biological mother and half is inherited from your biological father. Because no two people share the same DNA profile, each individual has their own unique DNA profile, with the exception of identical twins. DNA is the blueprint of the body and codes for all characteristics such as sex, eye color, skin

color, and hair color. DNA remains the same throughout one's life and throughout the cells in their body. For example, the DNA profile of an individual's white blood cells are the same as their sperm cells or skin cells.

6. DNA analysis is utilized in the forensic field to assist in placing or excluding individuals at or near crime scenes. Examples of DNA analysis include the analysis of: the semen and vaginal secretions from vaginal swabs after a rape; blood found on a knife blade and skin cells from the knife handle used in a stabbing; and the analysis of skin cells from clothing that was left at a crime scene. The DNA profiles obtained from these types of evidentiary items can then be compared with the DNA profiles obtained from victims, suspects, and witnesses to include or exclude individuals as possible contributors of the biological materials.

7. With recent advances in technology, we are now able to analyze samples that contain only a few cells using STR PCR DNA analysis, which stands for Short Tandem Repeat utilizing a Polymerase Chain Reaction. This method of DNA analysis can be utilized with only minute amounts of blood, semen, saliva, or cellular material including microscopic amounts of DNA. The STR PCR analysis isolates particular sections of the DNA that do not code for a specific trait such as eye color, but are essentially spaces in between the patterns of DNA that are unique for each individual or for identical twins. By isolating and targeting these particular areas on the DNA, we can amplify, or make copies of those specific targeted areas. This amplified DNA is then injected on specialized machines called genetic analyzers that use a method called capillary electrophoresis. Capillary electrophoresis is a process by which the DNA migrates through a polymer, the smaller pieces migrating faster than the larger fragments. The analyst reviews this data consisting of migration patterns of the DNA fragments, which is analyzed by software. The analyst then observes the unique DNA profile and compares this profile to other samples.

8. In contrast, just a little over decade ago we were using a technology that required obtaining a much larger sample of DNA material, including large blood and semen stains. This older technology is called Restriction Fragment Length Polymorphism or RFLP. These large fragments of DNA were visualized on agarose gels through electrophoresis and analyzed by their length and banding patterns.

9. In forensic practice, it is common to obtain partial DNA profiles from evidentiary items. A partial DNA profile refers to a profile where results are not obtained for every genetic marker tested. The term genetic marker refers to a gene or a specific DNA sequence at a certain location on the chromosome (small thread-like structure that contains DNA). The genetic markers or loci can be tested and this information can be used to identify individuals.

10. Generally, with the current methods of DNA testing performed, at least thirteen genetic markers are targeted to obtain a unique DNA profile. When results are not obtained at all thirteen locations, the resulting profile is termed a "partial profile" as opposed to a "complete profile" where results are obtained for all tested locations. There are several reasons why a complete profile may not be obtained from every forensic sample. The sample may have a limited quantity of DNA and the genetic material may be insufficient to produce a complete profile. The sample may also be degraded due to various factors and that may also result in a partial profile. A partial profile is an incomplete profile, to the extent that not all thirteen genetic markers were obtained from a sample, however, by no means does DNA analysis on a partial profile result in an incomplete or scientifically unreliable result. It is standard practice in the field of DNA analysis

to utilize partial profiles to obtain scientifically valid results. Moreover, partial profiles are suitable for comparison to other samples just as complete profiles. In our practice, we routinely analyze and report partial profiles and we regularly compare partial profiles to other samples and draw scientifically reliable conclusions. A partial profile may provide less information than a complete profile but that information may still be crucial in solving a crime. Therefore, partial profiles should not be ignored or considered less reliable than complete DNA profiles.

11. Once we have obtained a DNA profile from forensic evidence, that profile can be compared against other DNA profiles to try to see if there is a match. Both the State of Wisconsin and the Federal Bureau of Investigation maintain DNA "databanks" that include the profiles from other criminal offenders. The DNA databank in Wisconsin is the repository for known DNA profiles of convicted Wisconsin felons. It is also the repository for profiles developed from forensic material from unsolved offenses. The Wisconsin DNA databank is linked to the FBI's Combined DNA Index System ("CODIS"). CODIS includes known and unknown DNA profiles from federal, state and local laboratories.

12. Once a match is obtained between an evidentiary profile and a known individual, that individual is determined to be a possible source of this profile. In that case, a statistical calculation is performed and applied to the evidentiary profile to grant appropriate significance or weight to the match. This is accomplished by searching the evidentiary profile in the FBI's population database and determining the frequency of alleles (genotype) at each marker tested. Because all the STR markers are independent, these frequencies can be multiplied to determine the overall profile frequency. This profile frequency determines how common or rare the evidentiary profile may be. For example, a profile frequency of 1 in 1 million means that one would expect to find this evidentiary profile only once in one million randomly selected individuals.

**Documents Reviewed**

13. To reach my opinions, I reviewed the following documents related to Chaunte Ott v. City of Milwaukee, et al,, No. 09 cv 411: Forensic case reports from the State of Wisconsin Crime Laboratory ("Crime Lab") associated with victims Jessica R. Payne, Ouithreaun C. Stokes, Florence McCormick, Tanya L. Miller, Debra Harris, Sheila Farrior, Carron Denise Kilpatrick, Irene Smith aka Shela Jones, Joyce A. Mims, and Maryetta M. Griffin; memos generated by the Wisconsin State Crime Laboratory to the Criminal Investigation Bureau and Detective Gilbert Hernandez, both of the Milwaukee Police Department; and the case file of the DNA analysis in the Jessica R. Payne case performed by the Wisconsin State Crime Laboratory. These items are more specifically identified on the spreadsheet attached hereto as Exhibit B.

**DNA Analysis Excludes Chaunte Ott as Possible Contributor of DNA Found on Jessica Payne. DNA Analysis Confirms Walter Ellis is Implicated in Murder of Jessica Payne.**

14. Based on the DNA analysis performed in this case, Chaunte Ott was excluded from the DNA profiles in all of these forensic DNA case reports. Chaunte Ott has a unique DNA profile that is not present in any of the evidentiary items from the victims listed above. The male profile identified in each of the 10 homicide files reviewed is consistent with the unique DNA profile of serial killer, Walter E. Ellis.

15. With regard to the Payne case, the Crime Lab report dated 9/27/95 indicates the presence of semen on the vaginal swab/smear from Jessica R. Payne. The reports dated 9/25/02 and 6/5/03 excluded Chaunte Ott as a contributor of the DNA profile, which means that Chaunte Ott was not responsible for contributing any of the biological material obtained from Jessica Payne.

16. The Crime Lab report dated 9/16/09 matched the DNA profile obtained from the vagina swab/smear obtained from Payne to Walter E. Ellis. The report documents that "[t]he probability of randomly selecting an unrelated individual who could have contributed to this partial male profile is approximately 1 in 22 million African American population, 1 in 63 million in the Caucasian population, and 1 in 46 million in the Hispanic population." In other words, the likelihood of someone other than Ellis being the contributor of the semen is more than one in twenty-two million.

17. Chaunte Ott is clearly excluded from the biological evidence in the case of Jessica Payne. This means that Ott could not possibly have donated the DNA that was found on Jessica Payne's vaginal swab/smear. In fact, that DNA was later identified to be from Walter E. Ellis confirming Ellis as the true perpetrator of the crime confirming Chaunte Ott did not commit this offense. As evident from the remaining text of this affidavit, Jessica Payne's was only one of many cases where Walter Ellis was the true perpetrator demonstrating Chaunte Ott was wrongfully convicted.

**Male DNA Profile From Payne Linked to Mims and Stokes Homicides in 2003 and 2007**

18. As early as May 2003, the DNA evidence in the Payne case was linked to at least one other homicide, which would have been considered an important investigatory lead suggesting a link between multiple homicides.

19. On May 19, 2003, the Wisconsin State Crime Laboratory matched the unknown male DNA profile obtained from the vaginal swab from Payne to the identical unknown male DNA profile obtained in the case involving Joyce A. Mims via a search in the Wisconsin DNA Databank.

20. In my work as a DNA Analyst, the match between a DNA profile found on one victim with that of another victim, is considered an important forensic lead because there is a strong presumption that the same individual committed both crimes.

21. Because of its important investigatory value, the information pertaining to linking the DNA profiles between two cases should be communicated immediately to the referring agency for further investigation. Indeed, the Crime Lab's communication files for the Payne and Mims cases indicate that a Crime Lab analyst informed the Milwaukee Police Department that there was a link between the Payne and Mims cases on or about May 23, 2003.

22. Four years later, on 6/13/07, the same unknown male DNA profile hit via the Wisconsin DNA Databank to a case involving Ouithreaun C. Stokes.The report dated 7/5/07 indicates that a male DNA profile was obtained from blood near the legs of Ouithreaun C. Stokes, left hand fingernail swabs of Ms. Stokes, blood from a pepper spray container, and from the bra of Ms. Stokes. This male DNA profile hit via the Wisconsin DNA Databank on 6/13/07 to two other cases involving victims, Ms. Payne and Ms. Mims. The reports dated 7/14/09, 9/11/09, and 6/1/10 indicate a match to Walter E. Ellis among the male DNA profiles obtained from the biological evidence found in the Payne, Mims, and Stokes homicides. The September 2009 report states that, "[t]his conclusion is based on statistical analyses using a database of unrelated Caucasian, African American, and Hispanic individuals obtained from the FBI. The source attribution conclusion is

based on the calculated frequency of a DNA profile that is rarer than 1 in 6 trillion individuals, which is one thousand times the estimated world population." In other words, the likelihood of someone other than Ellis being the contributor of the semen is more than one in six trillion. The 2010 report documents that, "[s]tatistical calculations were performed using population statistics from databases of unrelated Caucasian, African American, and Hispanic individuals from the Federal Bureau of Investigation and a published database from Levedakou, et al (Journal of Forensic Science 46(3) 736-761). The source attribution conclusion is based on the calculated frequency of a DNA profile that is rarer than 1 in 7 trillion individuals, which is one thousand times the estimated world population."

23. The reports dated 9/15/09 and 2/26/11 include Walter E. Ellis as a contributor of semen to the vaginal swabs and right thigh swabs of Joyce A. Mims. The 2009 report states that, "[t]his source attribution conclusion is based on population statistics for a single-source profile from a database of unrelated Caucasian, African-American, and Hispanic individuals obtained from the FBI, and a calculated frequency of the DNA profile being rarer than one in six trillion individuals, which is approximately one thousand times the population of the world." In other words, the likelihood of someone other than Ellis being the contributor of the semen is more than one in six trillion. Similarly, the 2011 report documents that, "[t]he probability of randomly selecting an unrelated individual whose profile would be consistent to that obtained from the right thigh swabs (Item K1) is rarer than one in two million."

24. Finding a match among the DNA profiles among three victims is also considered a strong forensic lead with the likely assumption that a serial murderer is responsible for all three homicides.

25. Because of the highly probative nature of this information, it would be communicated immediately to the referring agency for further investigation. Indeed, a memo generated by the Crime Lab on 6/13/07 to the Criminal Investigation Bureau-Milwaukee Police Department indicated the DNA link between the Payne, Stokes, and Mims cases.

26. In calculating statistics in the Payne case, the Wisconsin Crime Laboratory utilized the FBI's Popstats software. Again these statistics are used to determine the frequency of the genotype and show how rare the DNA profile is in a given population. This is a method widely accepted in the forensic DNA community.

**DNA Analysis Links Walter Ellis to Seven Additional Homicides**

27. A male DNA profile was obtained from the vaginal and anal swabs of Florence McCormick which was stated in report dated 6/1/09 and uploaded into the Wisconsin DNA Databank. The report dated 9/16/09 includes Walter E. Ellis as the contributor of semen to the vaginal and anal swabs from Ms. McCormick. This report documents that, "[t]he source attribution is based on the calculated frequency of an STR profile that is rarer than one in six trillion individuals, which is one thousand times the estimated world population." In other words, the likelihood of someone other than Ellis being the contributor of the semen is more than one in six trillion.

28. Three unknown male DNA profiles were obtained from semen from the vaginal swabs, pajama pants, and rabbit fur coat from Tanya A. Miller. These three profiles were entered into Wisconsin DNA Databank on 4/21/09. The profile from the pajama pants hit to Antonio Starks aka Antonio Leroy Starks. On a subsequent report dated 9/15/09, Walter E. Ellis was included as the contributor of semen to the vaginal swabs of Ms. Miller. This report documents that, "[t]he source

attribution conclusion is based on population statistics for a single-source profile from a database of unrelated Caucasian, African-American, and Hispanic individuals obtained from the FBI, and a calculated frequency of the DNA profile being rarer than one in six trillion individuals, which is approximately one thousand times the population of the world." In other words, the likelihood of someone other than Ellis being the contributor of the semen is more than one in six trillion.

29. An unknown male profile obtained from the vaginal swabs from Debra Harris and reported on 6/2/09 was entered into the Wisconsin DNA Databank on 4/22/09. The DNA profile from Ms. Harris' anal swabs matches the blood from the pepper spray container from Ms. Stokes' case. The report dated 9/15/09 includes Walter E. Ellis as the contributor of semen to the vaginal and anal swabs from Ms. Harris.This report documents that, " [t]his source attribution conclusion is based on population statistics for a single-source profile from a database of unrelated Caucasian, African-American, and Hispanic individuals obtained from the FBI, and a calculated frequency of the DNA profile being rarer than one in six trillion individuals, which is approximately one thousand times the population of the world." In other words, the likelihood of someone other than Ellis being the contributor of the semen is more than one in six trillion.

30. An unknown male profile obtained from the vaginal swabs from Sheila Farrior and reported on 6/29/09 was entered into the Wisconsin DNA Databank on 5/5/09. The report dated 9/21/09 includes Walter E. Ellis as the contributor of semen to the vaginal swabs from Ms. Farrior.This report documents that, " [t]his source attribution conclusion is based on population statistics for a single-source profile from a database of unrelated Caucasian, African-American, and Hispanic individuals obtained from the FBI, and a calculated frequency of the DNA profile being rarer than one in six trillion individuals, which is approximately one thousand times the population of the world." In other words, the likelihood of someone other than Ellis being the contributor of the semen is more than one in six trillion.

31. An unknown male profile obtained from the vaginal smear of Carron Denise Kilpatrick, toothbrush, and cigarette butt was reported on 9/8/09. Subsequently on the report dated 9/15/09 Walter E. Ellis was included as the contributor to these items along with the anal swab from Ms. Kilpatrick. This report documents that, " [t]his source attribution conclusion is based on population statistics for a single-source profile from a database of unrelated Caucasian, African-American, and Hispanic individuals obtained from the FBI, and a calculated frequency of the DNA profile being rarer than one in six trillion individuals, which is approximately one thousand times the population of the world." In other words, the likelihood of someone other than Ellis being the contributor of the semen is more than one in six trillion.

32. The DNA found on the oral swabs from Maryetta M. Griffin matches Walter E. Ellis as reported on 5/11/10. This report states, "[t]he probability of randomly selecting an unrelated individual who would have a profile consistent to this evidentiary profile is at least as rare as one in 34 billion." In other words, the likelihood of someone other than Ellis being the contributor of the semen is more than one in thirty-four billion.

33. A memo generated by the Wisconsin State Crime Lab on 5/8/09 to Detective Gilbert Hernandez of the Milwaukee Police Department indicated the DNA link between the Payne, Stokes, Mims, Miller, Harris, and Farrior cases.

34. A memo generated by the Wisconsin State Crime Lab on 5/18/09 to Detective Gilbert Hernandez of the Milwaukee Police Department indicated the DNA link between the Payne, Stokes, Mims, Miller, Harris, Farrior, and McCormick cases.

35. A memo generated by the Wisconsin State Crime Lab on 9/8/09 to Detective Gilbert Hernandez of the Milwaukee Police Department indicated the DNA link between the Payne, Stokes, Mims, Miller, Harris, Farrior, McCormick, and Kilpatrick cases.

36. A memo generated by the Wisconsin State Crime Lab on 10/26/09 to Detective Gilbert Hernandez of the Milwaukee Police Department indicated the DNA link between the Payne, Stokes, Mims, Miller, Harris, Farrior, McCormick, Kilpatrick, and Irene Smith aka Shela Jones cases.

37. Walter E. Ellis' DNA was found on all ten of these homicide victims: Jessica R. Payne, Ouithreaun C. Stokes, Florence McCormick, Tanya L. Miller, Debra Harris, Sheila Farrior, Carron Denise Kilpatrick, Irene Smith aka Shela Jones, Joyce A. Mims, and Maryetta M. Griffin.

38. It is extremely rare to find a DNA link among 10 separate homicides. In my 16 years as a DNA analyst, including the analysis and review of thousands of cases, I have never been involved in such a case.

39. Based on my review the of the Crime Lab's files, it is my opinion to a reasonable degree of scientific certainty, that Walter Ellis' DNA is present in the evidence associated with the murders of Jessica R. Payne, Ouithreaun C. Stokes, Florence McCormick, Tanya L. Miller, Debra Harris, Sheila Farrior, Carron Denise Kilpatrick, Irene Smith aka Shela Jones, Joyce A. Mims, and Maryetta M. Griffin.

**FURTHER THE AFFIANT SAITH NOT.**

Dated: 3-28-13

Deanna D. Lankford
Associate Laboratory Director, Forensic DNA Analyst

**State of Texas**
**County of** Dallas
Sworn to and subscribed before me on
This 28th day of March, 2013.

NOTARY PUBLIC
My Commission Expires: 3-28-2015

LAURA GAHN
Notary Public, State of Texas
My Commission Expires
March 28, 2015