# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CHAUNTE OTT,

        Plaintiff,

        **-vs-**                        **Case No. 09-C-870**

CITY OF MILWAUKEE,
CARL BUSCHMANN,
JAMES DEVALKENAERE, and
ROBERT SIMON,

        Defendants.

## DECISION AND ORDER

This Decision and Order addresses the parties' motions in limine (ECF Nos. 187, 188) and Plaintiff Chaunte Ott's ("Ott") motions to amend or correct his final pretrial report to add a witness and strike undisclosed witnesses (ECF Nos. 205, 206), in advance of the jury trial scheduled to begin March 23, 2015, on Ott's civil rights claims against the Defendants pursuant to 42 U.S.C. § 1983 and supplemental state statutory indemnification claim against the City of Milwaukee ("Milwaukee"). Ott's claims arise from his 1996 conviction for the murder of Jessica Payne ("Payne"). Ott claims that City of Milwaukee Police Department ("MPD") officers Carl Buschmann ("Buschmann"), James DeValkenaere ("DeValkenaere"), and Robert Simon ("Simon") (collectively the "Defendant

officers") coerced false statements from Sam Hadaway ("Hadaway") implicating Ott in the murder. Ott also claims that Milwaukee violated § 1983 because its policy and practice of pursuing wrongful convictions through flawed investigations and coerced confessions was the moving force in the violations of his constitutional rights. Ott claims that the Defendants violated his right to due process (Count I), failed to intervene in the violation of his constitutional rights (Count III), and engaged in a conspiracy to deprive him of his civil rights (Count IV). Ott also alleges a supplemental state claim against Milwaukee for indemnification (Count VI). The claims that will proceed to trial, as described, were narrowed by the Court's September 19, 2014, Decision and Order (ECF No. 183) which, among other matters, addressed the Defendants' summary judgment motion. *Ott v. City of Milwaukee,* Case No. 09-C-870, –2014 WL 4715952, at *10 (E.D. Wis. Sept. 19, 2014).

## OTT'S MOTIONS IN LIMINE

Ott filed nine motions in limine which are not opposed by the Defendants. (*See* ECF No. 193.)

### 1. Non-Party Witnesses

Ott requests an order excluding any non-party witnesses from the trial. This unopposed motion for exclusion of any non-party witnesses is

- 2 -

granted.  *See* Fed. R. Evid. 615.

**2. Ott's Prior Arrests or Criminal Convictions**

Ott seeks to preclude any references to his prior arrests and convictions that are more than ten years old and the underlying circumstances related to them; specifically his arrest and felony conviction for possessing a gun, and his misdemeanor arrests and convictions for possessing marijuana and loitering.  For the following reasons, this unopposed motion is granted.

Federal Rule of Evidence 404(b)(1) bars any reference to past crimes that are used to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Moreover, the exceptions of Rule 404(b)(2) apply only in a criminal case. This evidence is also barred under Rule 403 because the danger of its unfair prejudice outweighs any probative value.  In addition, Rule 609(b) bars the use of such evidence as impeachment evidence because Ott's felony conviction is ten years old and has no probative value.  Thus, reference to Ott's prior arrests and/or criminal convictions that are more than ten years old at trial is barred.  *See Geitz v. Lindsey,* 893 F.2d 148, 151 (7th Cir. 1990) ("We are mindful of our duty to ensure that this class of civil rights plaintiffs are not unfairly prejudiced by the use of their criminal

- 3 -

pasts against them").

### 3. Ott's 2014 Ordinance Violation

Ott also wants to exclude any evidence of his 2014 arrest and municipal citation for a driving under the influence misdemeanor. Federal Rule of Evidence 402 states that "[i]rrelevant evidence is not admissible." Fed. R. Evid. 401 provides that evidence is relevant if "it has any tendency to make a fact more probable or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This unopposed motion to exclude any mention of Ott's 2014 arrest and citation for driving under the influence is granted because the evidence is not relevant and/or, alternatively, any probative value is substantially outweighed by the danger of unfair prejudice to Ott.

### 4. Hadaway's Criminal Convictions and Arrests Other Than Those That Relate to the Payne Homicide

Ott seeks an order barring evidence of Hadaway's arrests or convictions other than those related to the Payne homicide; specifically, Ott

- 4 -

wants to bar any inquiry at trial regarding Hadaway's arrest for a domestic violence charge and for obstructing a police officer which Hadaway testified about at his deposition in this case. Ott contends that such testimony is extremely prejudicial and should be barred under Rule 403.

This unopposed motion is granted because Hadaway's arrests/convictions for a domestic violence or obstructing a police officer are not relevant to any issue to be tried in this case. Because there is no indication that such arrests/convictions center on credibility, Hadaway's prior arrests are excluded under Federal Rules of Evidence 403 and 404(b)(1). *E.g., Cruz v. Safford,* 579 F.3d 840, 845 (7th Cir. 2009) (affirming the exclusion of seven prior arrests as highly prejudicial); *United States v. Simpson,* 479 F.3d 492, 496 (7th Cir. 2007), abrogated in part on other grounds by *United States v. Boone,* 628 F.3d 927, 933 (7th Cir. 2010).

**5. Gang Affiliation**

Ott seeks an order barring any reference to himself or any witnesses being affiliated with a gang.[1] There is no indication that any such references would be relevant. Therefore, this unopposed motion is granted and any references to Ott or any witnesses being affiliated with a gang is

---

[1] Ott states that there is no known allegation that any party or witness in this case is or was affiliated with any gang.

barred.

### 6. Jurors as Taxpayers or as Footing the Bill

Ott requests an order barring arguments appealing to the jurors as taxpayers, citing case law which states that arguments appealing to jurors' pecuniary interests as taxpayers are "of course" generally improper. *See e.g. Moore ex rel. Estate of Grady v. Tuleja,* 546 F.3d 423, 429 (7th Cir. 2008). This unopposed motion is granted and arguments that appeal to the jurors as taxpayers are barred.

### 7. Defendants' Commendations, Awards, or Job Evaluations

Ott states that because he has agreed not to introduce evidence of prior misconduct complaints against Buschmann, DeValkenaere, and Simon—including at least one complaint involving alleged witness coercion—it would be inappropriate to bolster the Defendant officers' records through positive evidence regarding any commendations, awards, or job evaluations. Ott also states that such evidence is character evidence that is prohibited under Fed. R. Evid. 404(a). ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). Ott's unopposed motion for an order barring evidence of the Defendant officers' commendations, awards, and job evaluations is granted.

- 6 -

### 8. Former Defendants

Ott seeks to bar any mention of the fact that former Police Chiefs Arthur Jones (A. Jones)[2] and Nanette Hegerty, Officers Eric Moore, Percy Moore, Ricky Burems ("Burems"), and Michael Dubis, who may be called as trial witnesses, were formerly defendants in this action. Evidence that such individuals were formerly named as defendants in this case is not relevant and, if deemed to be relevant, its probative value would be outweighed by its propensity to confuse the issues and mislead the jury. Therefore, Ott's unopposed motion for an order barring references to prior defendants in this lawsuit is granted.

### 9. "Out of Town" Counsel

Ott seeks an order barring any reference by the Defendants to his attorneys being from out-of-town. The unopposed motion is granted and any references to Ott's counsel as being from out-of-town is barred.

## DEFENDANTS' MOTIONS IN LIMINE

The Defendants filed 13 motions in limine, and Ott opposes all but one of them.

### 1. Claimed Failure by Buschmann or Michael Wesolowski to Disclose the 2003 DNA Test Results to Ott or His Then-

---

[2] The Court departs from its usual practice of referring to an individual solely by surname because two individuals discussed in this decision have the surname Jones.

**Counsel Until 2007**

The Defendants assert that given the Court's September 19, 2014, Decision and Order granting their summary judgment motion "with respect to . . . the non-disclosure of the 2003 DNA test results against Buschmann and Milwaukee . . . " *Ott,* 2014 WL 4715952, at *11, and the denial of Ott's motion to add Michael Wesolowski ("Wesolowski") as a defendant because of the dismissal of the DNA non-disclosure claim against Buschmann, evidence concerning the 2003 test, its results, or its handling by anyone in the MPD is irrelevant and should be excluded under Rule 402. Even if relevant, the defendants assert the evidence should be excluded under Rule 403 because any value would be outweighed because it would confuse the issues or mislead the jury.

Ott contends that the evidence is relevant to both his conspiracy claim and his request for punitive damages. He also maintains it is relevant to show an absence of a mistake in Buschmann's withholding from Ott exculpatory evidence relating to the 1995 Payne investigation. Ott also argues that this evidence is relevant to the matter of the coercion used to obtain Hadaway's confession and to the information provided by Latonia Cooper ("Cooper") connecting Walter E. Ellis ("Ellis") to the crime. In reply, the Defendants contend that none of Ott's reasons provide a basis

- 8 -

for admission of the evidence of the 2003 non-disclosure.

Relevance is a "low threshold" to satisfy, as its definition is very broad. *United States v. Boswell,* 772 F.3d 469, 475 (7th Cir. 2014). The claimed non-disclosure of the 2003 DNA evidence is relevant to the conspiracy claim. The non-disclosure helped further the conspiracy by suppressing evidence that could have raised questions about Ott's conviction for the Payne murder, and it is circumstantial evidence of the conspiracy among the Defendant officers. It also is relevant to the punitive damages issue. Although the evidence may be prejudicial to the Defendants, it is not unduly prejudicial, and its probative value outweighs any prejudice to the Defendants. *See generally United States v. Hanna,* 630 F.3d 505, 511 (7th Cir. 2010). In light of the foregoing, the Defendants' motion to exclude the alleged failure by Buschmann and/or Wesolowski to disclose the 2003 DNA test results to Ott or his then-counsel John Pray ("Pray") until 2007 is denied.

### 2. Coercion of Richard Gwin to Provide Statement or Testimony Against Ott, Including Any Expert Testimony to Support That Conclusion or Based Upon Alleged Coercion

The Defendants seek to exclude any testimony, evidence or argument that Richard Gwin ("Gwin") was coerced to provide his statement or testimony against Ott, including any expert testimony by

- 9 -

Ott's police-practices expert, Dennis Waller ("Waller"), that such coercion occurred. They assert that the evidence is irrelevant, citing the summary judgment dismissal of a portion of Ott's due process claim against the Defendant officers arising out of Gwin's statement (*Ott,* 2014 WL 4715952, at *71); the only evidence regarding such coercion is Pray's affidavit attesting to a statement made to him by Gwin's sister, Theresa Jones ("T. Jones"), which should be excluded under Rule 805 as double hearsay; and, even if offered through T. Jones, it should be excluded as unreliable.

Ott responds that he anticipates T. Jones will testify that prior to his 1997 death Gwin told her that he was coerced by the Defendant officers into making false statements and giving false testimony inculpating Ott in the crime, and that her testimony is admissible under Rule 804(a)(4). He further contends that Waller's testimony regarding Gwin's coercion should be admitted.

The double hearsay issue is mooted by Ott's representation that T. Jones will testify at trial. Her testimony falls within the hearsay exception of Rules 804(a)(4) and (b)(3)(A): Gwin is unavailable because of his death, and the admission that he lied to due to coercion is a statement against Gwin's interests because it could have exposed him to perjury charges or civil liability. Furthermore, the alleged coercion of Gwin's

- 10 -

statement is relevant because the Defendants intend to introduce evidence of Gwin's earlier statement implicating Ott and Gwin's trial testimony to show what information was available to Buschmann, DeValkenaere, and Simons as they were questioning Hadaway and at Ott's criminal trial. Furthermore, under Fed. R. Evid. 703, information relied upon by Waller need not be admissible if experts in his field would reasonably rely on those kinds of facts in forming an opinion on the subject. Based on the foregoing, the Defendants' motion to exclude any evidence, including that of Waller, that Gwin was coerced to provide his statement or testimony against Ott is denied.

### 3. Gwin's Prior Statement and Trial Testimony and Evidence, Testimony, or Argument That Gwin Lied to Police or in His Testimony

The Defendants seek an order permitting them to introduce evidence of Gwin's statement and criminal trial testimony for the limited purpose of establishing the information available to the Defendant officers when they questioned Hadaway and during Ott's criminal trial. If T. Jones is permitted to testify about how Gwin's statements were obtained, Ott does not object to the Defendants introducing Gwin's police statements to show the course of the investigation. Otherwise, Ott objects under Rule 403 grounds that the dangers of unfair prejudice and misleading the jury

outweigh any probative value.

Without some testimony about how Gwin's police statement was allegedly procured, the jury will be left with an incomplete view of Gwin's statement and testimony. *See generally Fox v. Hayes,* 600 F.3d 819, 840 (7th Cir. 2010). The Defendants' motion is granted. They will be allowed to present evidence of Gwin's statement and criminal trial testimony for the limited purpose of establishing the information available to the Defendant officers in their course of questioning Hadaway and at Ott's criminal trial, with the requirement that Ott will also be allowed to present T. Jones' testimony regarding the alleged coercion of Gwin's statement and/or testimony.

### 4. Destruction of Any Notes That May Have Been Prepared By Any of The Defendant Officers Regarding Any Witness or Suspect Statements That They Took in The Payne Homicide Investigation, Including Any Expert Testimony Concerning The Destruction of Such Materials

The Defendants seek the exclusion of evidence that any contemporaneous handwritten notes taken by the Defendant officers relating to their interrogation of Gwin, Hadaway, Ott, Cooper, and other witnesses or suspects were destroyed after the officers dictated what became typewritten reports and compared the reports to the notes. The Defendants argue that because there is no evidence of what the notes

- 12 -

contained the jury will speculate about the contents, citing *Berry v. Deloney,* 28 F.3d 604, 609 (7th Cir. 1994).

Ott asserts that, without doing so expressly, the Defendants are rearguing the Court's summary judgment determination that the case law recognizes a claim for municipal liability based on a policy and practice of segregating information in notebooks and then destroying those notes rather than providing them to a criminal defendant, and that the Defendants' arguments lack merit.

The Defendants do not challenge the relevancy or consider the factors to be balanced under Rule 403 when considering whether to exclude relevant evidence due to a danger listed in that Rule. The evidence at issue relates to MPD's apparent practice, contrary to its written policy, of taking interview notes in other than memo books and destroying the notes in order to skirt its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Therefore, it is relevant to Milwaukee's potential liability under *Monell v. Dep't of Social Servs. of the City of N.Y.,* 436 U.S. 658, 690-94 (1978), and whether its custom or policy was a cause of the Ott's injury. The Defendants have not established a basis to exclude relevant evidence because of a concern regarding jury speculation about what those destroyed memo books might contain.

- 13 -

This case is distinguishable from *Berry,* 28 F.3d at 605-06, which was cited by the Defendants. *Berry* was a civil rights action brought by high school student Angela Berry, an applicant to transfer from one high school to another, against her truant officer, William Deloney, alleging violation of her civil rights during the course of their non-consensual sexual relationship. Deloney's responsibilities included verification of information concerning residency provided by transfer students, which involved sending out forms; verifying the information provided on returned forms, initialing the forms, and submitting the applicant's file to the assistant principal for approval. *Id.* Deloney contended the relationship was consensual and began after he verified information concerning Berry's residence and the assistant principal confirmed that Berry resided in a different district. *Id.*

Deloney testified that he initiated his investigation into Berry's requested transfer by asking Berry and her grandmother to fill out forms requiring background information. *Id.* Berry's counsel attempted to cross-examine Deloney about the school district's failure to produce the missing address verification form. *Id.* at 609. In upholding the decision not to allow the cross-examination, the appeals court noted that Deloney could not introduce the report as evidence because he had failed in his attempt to

- 14 -

subpoena the document from the district, and it held that the district court acted within its discretion in precluding Berry's counsel from admitting evidence that would have merely invited the jury to speculate that Deloney suppressed evidence helpful to Berry. *Id*.

Unlike *Berry,* this case involves an alleged unconstitutional pattern and practice designed to avoid *Brady* obligations which forms a basis for Milwaukee's liability. Speculation as to the contents of the notes is neither the purpose nor the focus of the evidence. In addition, this case does not involve evidence controlled by a non-party.

Based on the foregoing, the Defendants' motion to exclude evidence of the destruction of handwritten notes taken by the Defendant officers relating to their interrogation of Gwin, Hadaway, Ott, Cooper, and other witnesses or suspects which were destroyed after the officers dictated what became typewritten reports is denied.

### 5. Complaints of Misconduct or Regarding Any Discipline of Any Defendant Officer

The Defendants state that the Defendant officers' complete personnel files were provided to Ott's counsel. Ott's counsel has stipulated that evidence of any complaints of misconduct or disciplinary actions as reflected in such files will not be admitted into evidence, and requests

- 15 -

entry of an order in accordance with that stipulation. Ott does not oppose the Defendants' motion. Based on the foregoing, the Defendants' motion is granted and evidence of any complaints of misconduct or disciplinary actions as reflected by the Defendants officers' personnel files is excluded.

### 6. Burems' Testimony and Evidence or Argument Regarding His Complaint Concerning Matters Relating to the Debra Maniece Homicide Investigation

The Defendants seek exclusion of Burems' testimony and his January 2007 Milwaukee Fire and Police Commission ("MF&PC") complaint about conduct of some members of the MPD Homicide Division and Assistant District Attorney Mark Williams ("Williams") for "conduct [which] is centered on the cold case investigation of the 1994 homicide of 31 year-old Debra Maniece." (Smokowicz Aff., Attach. F (Burems complaint).) (ECF No. 190-6.) They contend that such evidence is irrelevant under Rule 402 and should be excluded or if deemed relevant, should be excluded under Fed. R. Evid. 403.

Ott states that the motion should be denied, as this Court did with a similar motion in a similar case, *Avery et al. v. City of Milwaukee et al.,* Case No. 11-C-408, 2015 WL 247991 (E.D. Wis. Jan. 20, 2015). Ott further maintains that the Burems evidence is relevant because it relates to Buschmann's conduct and how he conducted another cold case

- 16 -

investigation, and Waller relied on Burems' complaint and deposition testimony to reach his opinions in this case regarding how the MPD conducts homicide investigations. (Donnell Decl., Ex. 1 (Waller Report) 17-18) (ECF No. 198-1). In reply, the Defendants contend that the facts of this case are distinguishable from those of *Avery*.

As summarized in *Avery v. City of Milwaukee,* 40 F. Supp. 3d 1089, 1091 (E.D. Wis. Aug. 18, 2014), Plaintiff William Damon Avery alleges that certain City of Milwaukee police detectives framed him for the murder of Maryetta Griffin ("Griffin"). Avery was exonerated after spending six years in prison when DNA testing excluded him and matched the profile of Ellis, an accused serial killer.

Griffin and Maniece were African-American and Payne was Caucasian, and the Burems evidence raises questions regarding the MPD's allocation of assets and treatment of homicide investigations involving African-American victims as compared to those involving Caucasian victims. However, the Burems evidence is relevant to the broader issues in this case regarding the customs, policies and practices of the MPD in conducting homicide investigations, and Buschmann's conduct in conducting another cold case investigation. *See generally Thompson v. City of Chi.,* 722 F.3d 963, 972 (7th Cir. 2013.) The Court's ruling in *Avery,*

- 17 -

2015 WL 247991, at *2, was predicated on the same grounds, and there is no significant distinction between the two cases. Therefore, the Defendants' motion to exclude Burems' testimony and his January 2007 MF&PC complaint is denied.

### 7. The State of Wisconsin Claims Board's Decision Pertaining to Ott

The Defendants seek to bar Ott from introducing any testimony or evidence relating to the State of Wisconsin Claims Board's ("Claims Board") decision pertaining to him, asserting the evidence is irrelevant and any probative value is substantially outweighed by the danger of unfair prejudice and confusion. Ott maintains that the Court should rule as it did in *Avery*, 2015 WL 247991, at *2, and deny the motion because the Claims Board's decision is probative of the issue of Ott's innocence and, even if the Defendants concede his innocence, Ott's damages.

Although the Defendants state that, unlike *Avery*, they will not be contending that Ott may actually be guilty of the Payne homicide, the fact remains that the evidence is relevant to Ott's damages. Furthermore, the dangers asserted by the Defendants—unfair prejudice and confusion—will be avoided because the jury will be properly instructed on the law, making it clear that the Claims Board's decision is only one piece of evidence to

- 18 -

weigh when applying that law. The Court is not convinced that the probative value of this evidence is outweighed by any danger of unfair prejudice or confusion. Fed. R. Evid. 403. The motion to bar mention of the Claims Board's decision pertaining to Ott is denied.

### 8. Prefix "Ellis" From Any Bates Stamp on Documents Offered As Exhibits at Trial

The Defendants seek an order excluding the prefix "Ellis" from any Bates stamp on documents offered as exhibits at trial, asserting that the fact that some documents may have been Bates-stamped by Ott to identify the documents as related to Ellis is irrelevant to any of the claims or defenses in this case under Rule 401 and, therefore, inadmissible under Rule 402. They further argue that, even if determined to be relevant, those documents should nevertheless be excluded from trial under Fed. R. Evid. 403 because the probative value associated with that evidence is substantially outweighed by the danger of unfair prejudice and confusion.

Ott asserts the motion should be denied as moot if the Court denies Defendants' motions in limine numbers 10 and 11 seeking to exclude evidence that Ellis was linked through DNA to Payne, and seeking to exclude evidence that Ellis was linked through DNA to other victims. Alternatively, if the Court grants those motions, Ott does not object to the

- 19 -

redaction.

The prefix "Ellis" in the Bates stamp was added by Ott's attorney for identification or classification of discovery materials. It has no evidentiary relevance and could confuse or mislead the jury. Therefore, the Defendants' motion to exclude the prefix "Ellis" from any Bates stamp on documents offered as exhibits at trial is granted.

### 9. Testimony or Evidence Pertaining To DeValkenaere as a Defendant in *Avery*

The Defendants seek an order excluding any testimony or evidence that DeValkenaere is a defendant in the *Avery* case, contending that any such evidence is irrelevant because the circumstances in that case took place after the incidents in this case, involved different detectives, and the fact that DeValkenaere is named as a defendant in both cases is insignificant and immaterial. The Defendants also contend that any probative value is outweighed by its prejudicial effect of confusing the jury, and the jury may infer that it may be more likely that DeValkenaere has done something wrong because he has been named as a defendant in more than one lawsuit.

Ott agrees that DeValkenaere's status as a defendant in *Avery* is not relevant per se. However, Ott states his concession does not mean that he

- 20 -

concedes DeValkenaere's actions during the Griffin homicide investigation underlying *Avery* are irrelevant or inadmissible.

In light of the foregoing, and because Devalkenaere's status as a defendant in *Avery* is not relevant, the Defendants' motion to exclude any testimony or evidence pertaining to DeValkenaere as a defendant in *Avery* is granted.

### 10. DNA Evidence Linking Ellis to Payne

The Defendants seek to exclude evidence that Ellis was linked through DNA to the Payne homicide, hedging on the question of relevance, but asserting such evidence will unfairly prejudice the jury or confuse the issues because in addition to causing the jury to conclude that Ellis killed Payne and Hadaway's statement and testimony were false, the jury may also conclude that the Defendant officers had to know that the statement and testimony were false, even though they could not have had the benefit of the 2009 DNA testing in 1995. In opposing the motion, Ott cites *Parish v. City of Elkhart, Ind.,* 702 F.3d 997, 999-1003 (7th Cir. 2012), which held that "[b]ecause the district court's rulings improperly limited the introduction of evidence relating to Parish's innocence, and that evidence was critical to the damages issue, the award of damages cannot stand." *Id.* at 1003. In reply, the Defendants contend *Parish* presents a different

- 21 -

situation.

In *Parish,* a wrongful conviction case, the district court judge excluded DNA evidence that would have tended to establish plaintiff Christopher Parish's innocence by showing that another man had committed the crime for which the defendant detectives had developed evidence suggesting Parish was guilty. *Id.* Even though Parish proved a constitutional violation and won the trial, the jury awarded almost no damages, likely because they believed he had nonetheless committed the crime. *Id.* The unanimous panel reversed, explaining that it was error to have excluded the full panoply of the DNA evidence (along with other evidence bearing on innocence). *Id.*

The DNA evidence in this case is admissible on the issue of damages and is also relevant to the substantive claims. The principal liability issue at trial is whether the Defendant officers violated Ott's rights by fabricating an account of his guilt and coaching Hadaway during their interrogation of him so that Hadaway came away from that interrogation telling a story that implicated himself and Ott in the Payne murder. Hadaway claims that the Defendant officers coerced him and improperly provided him with corroborative details of the crime that he would not otherwise have known for him to repeat at Ott's criminal trial. The

- 22 -

Defendants deny Hadaway's claims. Ott may introduce evidence tending to establish that he (and Hadaway) did not commit the Payne murder. If there was evidence that the crime was actually committed by a serial killer, it may follow that it is more likely than not that Hadaway and Ott are the ones telling the truth about what happened. The DNA evidence is relevant because it links Ellis to a string of rape-murders, including Payne's. The Defendants' argument regarding unfair prejudice is not persuasive. The Defendants can counter any prejudice by presenting evidence regarding when DNA evidence/testing became available. The Defendants' motion to exclude DNA evidence linking Ellis to Payne is denied.

### 11. DNA Testing Linking Ellis to the Murders of Other Females

Relying on the same reasons set forth in the previous motion, the Defendants seek to exclude evidence, testimony and argument regarding DNA links between Ellis and other female homicide victims, including those for which Ellis was convicted. Based on the Court's reasoning for denying the Defendants' motion to exclude DNA evidence linking Ellis to Payne, this motion regarding the exclusion of evidence linking Ellis to the murders of other females is denied.

- 23 -

### 12. Selected Expert Opinion and/or Testimony of Waller

The Defendants seek an order excluding Waller's opinions and/or testimony to the extent he has opined on areas outside the scope of his expertise; relied upon material published after the 1995 interrogations; and addresses the failure of officers not named as defendants to include information from Cooper in police reports. They also assert he should be precluded from expressing an opinion that: Cooper's information should have caused further investigation of Ellis, which would have linked him to the Payne homicide; the fact that other homicides had occurred in the vicinity of the Payne homicide could have led to the arrest of Ellis rather than Ott in 1995; the Defendant officers should have attempted to link Ott to other unsolved homicides; and to the extent that he addresses acceptance of purportedly flawed investigations. Ott asserts that like *Avery*, wherein the Court denied a similar motion, the Defendants have misconstrued Waller's testimony, and that the instant motion should be denied.

Rule 702 requires the Court to perform a gatekeeping function in order to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993).

- 24 -

In its analysis the Court must use the following standards: first, the expert must be qualified by knowledge, skill, experience, training, or education; second, the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case. *Lees v. Carthage Coll.*, 714 F.3d 516, 521-22 (7th Cir. 2013). With regard to reliability, the Court considers a non-exhaustive list of guideposts, including whether the scientific theory can be or has been tested, whether the theory has been subjected to peer review and publication, and whether the theory has been generally accepted in the relevant scientific, technical, or professional community. *Am. Honda Motor Co., Inc. v. Allen,* 600 F.3d 813, 817 (7th Cir. 2010) (citing *Daubert*, 509 U.S. at 593-94). The party who proffers an expert's testimony bears the burden of establishing its admissibility under Rule 702. *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009).

In *Avery,* 2015 WL 247991, at *2, a wrongful conviction case involving Waller as an expert on issues relating to police policy, procedures, and practice, this Court found that all the *Daubert* factors were

satisfied, noting Waller has a Bachelor of Science degree in police administration from Michigan State University and a Master of Science degree in public administration from Florida International University. "His training and experience as an officer and instructor is extensive." *Id.* He has served as a consultant/expert witness related to police policy, procedure and practice in more than 500[3] cases in 35 states and a variety of judicial venues over a 26-year period. "Therefore, he is qualified as an expert by his knowledge, skill, experience, training and education. Moreover, Waller's methodology is reliable and sound because it is based on his specialized knowledge of law enforcement procedures." *Id.* (citing *Jimenez v. City of Chi.,* 732 F.3d 710, 721 (7th Cir. 2013)).

Waller's opinions focus on whether the Defendants' conduct in their investigation of the Payne homicide deviated from proper investigative procedures by inadequately conducting homicide investigations, improperly using jailhouse informants, developing and considering only evidence that fit their theory of the crime, inadequately supervising interview and interrogation techniques, as well as the policies and practices of the MPD

---

[3] *Avery* states that Waller was involved in 600 cases. *Avery*, 2015 WL 247991, at \*2. However, Waller's March 28, 2013, report in this case states he has been involved in 500. The report Waller prepared for *Avery* is dated February 6, 2014. *Avery*, Case No. 11-C-408, (Response Mot. In Limine No. 1, Ex. A) (ECF No. 102-1.)

and deviations from written practices. This testimony, based on Waller's specialized knowledge of police administration and police practices, will obviously assist the trier of fact in resolving the claims in this case. *Richman v. Sheahan*, 415 F. Supp. 2d 929, 945 (N.D. Ill. 2006) ("There is no doubt that under Rules 702 and 704 an expert may testify about applicable professional standards and the defendants' performance in light of those standards").

The Defendants contend that Waller has offered opinions outside the scope of his expertise—regarding psychology and polygraphs. In his six-page opinion regarding improprieties in the manner in which Hadaway's confession was taken, Waller cites a psychology textbook, which explains factors that may make an individual susceptible to a false confession (*See* Donnell Decl., Ex. 1 (Waller Report) 8-14.) Waller's ultimate opinion addresses law enforcement practices; specifically that "providing an easily intimidated witness or suspect with specific information about a crime and then threatening that person with life imprisonment unless they implicate another party is inconsistent with the proper determination of the truth about what happened." (*Id.* at 8.) It is permissible for an expert to rely on material that an expert in his or her field would ordinarily rely on: a psychology textbook about false confessions—a known problem facing law

enforcement—is such material. *See Cooper v. Carl A. Nelson & Co.,* 211 F.3d 1008, 1020 (7th Cir. 2000).

Furthermore, Waller has not offered an opinion on polygraphs. The Defendants cite page 29 of Waller's report which states, "[q]uestions related to the context of a sexual assault were asked of Hadaway when he was given a polygraph," and lists the questions asked of Hadaway, simply reflecting that Waller considered the MPD polygraph report. Waller states that this line of questioning shows the Defendants knew or should have known that there was a sexual assault component to the Payne homicide, and that, as a result, they knew or should have known that the Payne homicide may have been linked to other "similar homicides which occurred in the area." (*Id.*) As a police practices expert, it is proper for Waller to have reviewed the police reports produced during this litigation, including the polygraph report, because those are the types of materials on which police officers and police practices experts ordinarily rely. *See Cooper,* 211 F.3d at 1020.

The Defendants also seek to exclude opinions based on texts that post-date the 1995 Payne investigation and 1996 wrongful prosecution of Ott. Review of Waller's 37-page report establishes that it draws on many resources and not solely on a text or texts. Moreover, the Defendants have

- 28 -

not identified any advances in police or investigative practices that make Waller's references to the challenged texts inappropriate. The Defendants may cross-examine Waller at trial about the standards he applied and sources on which he relied for his opinions, but his reference to a text or texts post-dating the incident(s) does not warrant excluding his opinions.

Defendants also seek to exclude any testimony by Waller about the failure of the Defendants to follow up on the information about Ellis provided by Cooper, as touching upon officers not named as defendants in this case and, therefore, speculative. However, that is not the point of the evidence. Rather, the evidence establishes that DeValkenaere interviewed Cooper and that he and Buschmann were the primary detectives in the Payne investigation. As such, DeValkenaere and Buschmann should have been aware of all the information gathered during the investigation, including exculpatory information. *See Ott,* 2014 WL 4715952, at *8.

Waller has opined that based on information known to the Defendants in 1995, they should have tried to link the Payne homicide to the other unsolved homicides involving sexual assaults, and that based on Cooper's information Ellis should have been considered as a suspect. (Donnell Decl., Ex. 1 at 27-30.) Waller further describes the DNA results that linked the Payne and other homicides to Ellis in an effort to show that

- 29 -

had the Defendants pursued the information Cooper provided and the connection between the various north side sexual assault-homicides, the investigation might have led to the correct offender. Waller is not opining on whether the Defendants should have done DNA testing in 1995.

In the challenged portion of Waller's opinion about the Defendants' failure to investigate whether Payne was sexually assaulted, Waller opines that DeValkenaere and Buschmann did not believe Payne had been sexually assaulted and they ignored physical evidence to the contrary, including the high concentration of seminal fluid obtained near her vaginal area, and the facts that her pants were pulled down, her bra was torn exposing her breasts, and her body was bruised. (Donnell Decl., Ex. 1 at 27-28.) Consequently, DeValkenaere and Buschmann did not consider the Payne homicide as a violent sexual assault and did not make any attempt to link it to other unsolved female sexual assault-homicides. This opinion is within Waller's expertise as a police practices expert and is admissible.

The Defendants contend that this aspect of Waller's opinion will "not help the trier of fact to understand the evidence or to determine a fact in issue." However, Waller's testimony that DeValkenaere and Buschmann ignored evidence that Payne was sexually assaulted is relevant to Ott's claim that the Defendants concentrated on him as the perpetrator and

- 30 -

coerced Hadaway's false statements, and perhaps those of Gwin, while ignoring evidence in the case, including that Payne was sexually assaulted and that Cooper told the police and DeValkenaere that Ellis was with Payne near the time of her murder. Waller's testimony that the Defendants ignored physical evidence that Payne was sexually assaulted, and that to do so violated their professional standards, is within his expertise and the parameters of admissible expert testimony. *See, e.g., Richman,* 415 F. Supp. at 945. Accordingly, such evidence will not be excluded.

The Defendants also seek to exclude Waller's opinion that that the Defendants' investigation of the Payne homicide did not attempt to link Ott, Hadaway, or Gwin to nearby homicides. In Waller's opinion, if the Defendants had properly considered the Payne homicide as also involving a sexual assault, they should have tried to link Ott, Hadaway, and Gwin to the other unsolved female sexual assault-homicides in the vicinity. (*See* Donnell Decl., Ex. 1 at 30.) Waller's opinion with respect to this issue is based on his extensive experience in law enforcement coupled with the evidence that Payne was sexually assaulted. This opinion testimony is admissible expert testimony. *See Richman,* 415 F. Supp. 2d at 945.

The Defendants also claim that this opinion should be excluded

- 31 -

because it will not assist the trier of fact. However, this portion of Waller's opinion explains the manner in which the Defendants conducted the Payne homicide investigation, and their failure to abide by expected standards of their profession. Such evidence is relevant to Ott's theory of the case that the Defendants' investigation of the Payne homicide was flawed because they coerced at least one witness to pin the murder on him and ignored other evidence, including physical evidence suggesting that Payne had been sexually assaulted. Waller is not expressing the opinion that had the Defendants sought to connect Payne to the other unsolved female homicides in 1995 they would have linked all the cases to Ellis at that time. Rather, he is opining about how the Defendants' investigation failed to comply with the profession's standards of practice by ignoring and not investigating key evidence in the Payne homicide. *See Jiminez,* 732 F.3d at 722.

The Defendants also want to exclude the summary of Waller's opinions found on pages 31-37 of his report, misinterpreting his opinions on these pages as a *Monell* claim related to flawed investigations. However, those statements summarize his opinions on the Payne investigation. *See Jiminez,* 732 F.3d at 722. The Defendants' concerns regarding Waller's opinions and testimony may be addressed on cross-

examination. The Defendants' motion to exclude portions of Waller's testimony is denied.

### 13. Expert Testimony of Deanna Lankford as Cumulative or, In the Alternative, Excluding Any Opinion of Lankford as To the Perpetrator of the Payne Homicide or That Ott Was Wrongfully Convicted

The Defendants seek an order excluding the expert testimony of Deanna Lankford ("Lankford") as cumulative, or in the alternative excluding any opinion of Lankford as to the perpetrator of the Payne homicide or that Ott was wrongfully convicted.

Ott states that he has no intention of attempting to call multiple experts to testify on the same issues; however, Ott is not required to rely only upon the testimony of Wisconsin State Crime Laboratory employees; Lankford is qualified to interpret the scientific reports, and in some respects her report goes further than those of the technicians. Ott also states that he has no intention of eliciting an opinion from Lankford that Ellis is the perpetrator or that Ott was wrongfully convicted. Based on Ott's representations, the Defendants' motion is denied.

### Corrected Pretrial Report

Ott seeks leave to file a corrected pretrial report adding A. Jones as a witness. The Defendants contend that they did not have notice that he

- 33 -

would be a witness, A. Jones will not voluntarily attend the trial and is outside this Court's Rule 45 subpoena power, and that if Ott is allowed to amend his report, he should be directed to designate five pages of A. Jones' deposition transcript to be read at trial, and they should be allowed to make counter-designations from that deposition transcript.

Ott requested permission to add A. Jones on March 4, two days after filing his pretrial report. A. Jones, formerly a defendant in this litigation, was deposed on October 19, 2011. As previously noted, by a September 19, 2014, Decision and Order granting the Defendants' motion for summary judgment in part, A. Jones was dismissed as a defendant in this action and a portion of Ott's due process claim relating to the 2003 non-disclosure of a DNA report, a document that A. Jones may have seen, was also dismissed. *See Ott* 2014 WL 4715952, at \*5, \*9-10.

In asserting that they lacked notice A. Jones would be a trial witness, the Defendants rely those rulings and indicate that it is not clear why he would still be a witness in this case. The deposition testimony of A. Jones, MPD chief from November 1996 until his retirement in November 2003, *id*. at \*5, included testimony regarding the MPD's apparent practice, contrary to its written policy, of taking interview notes other than in memo books and destroying the notes. (*See* Donnell Decl.

Reply, Ex A (Excerpts of A. Jones Dep. Tr.) 19, 20, 24.) (ECF No. 217.) That evidence is relevant to Ott's contention that the MPD skirted its obligations under *Brady*, 373 U.S. at 83, and Milwaukee's potential liability under *Monell,* 436 U.S. at 690-94, if the MPD's custom or policy was a cause of Ott's injury.

The Defendants' claim regarding lack of notice is not persuasive. Moreover, notice to the Defendants was only delayed by two days. Ott's motion is granted, and the Clerk of Court will be directed to file Ott's corrected final pretrial report.

Given the Defendants' representation that A. Jones will not voluntarily appear at trial and is outside the 100-mile limitation on the Court's subpoena power, Ott should supplement his final pretrial report to designate the five pages of A. Jones' deposition transcript to be read at trial. *See* Civ. L.R. 16(c)(1)(F) (E.D. Wis.) The Defendants will also be allowed to supplement their pretrial report to designate any pertinent five-page portion of that deposition transcript in response to Ott's designation.

### Previously Undisclosed Witnesses

Pursuant to Fed. R. Civ. P. 37(c)(1), Ott requests that five previously undisclosed witnesses, Kenneth Morrow; Cameo Barbian-Gayan; James

- 35 -

Kraft; Michael Young; and Diana Miller ("Miller") identified by the Defendants in their March 2, pretrial report, be precluded from testifying at trial because of their untimely disclosure. The Defendants assert that Ott has been aware of the existence of such individuals, that counsel for the Defendants believed he had supplemented the Defendants' Rule 26(a) disclosures to identify Miller as a potential witness (Smokowicz Aff. Opp'n Strike ¶ 5) (ECF No. 211), and that the failure to disclose was harmless. They offer to make the five witnesses available for deposition, as well as allowing depositions of Milwaukee County Assistant District Attorney Mark Williams ("Williams") regarding the 2003 disclosure of the DNA report and of Buschmann regarding Miller.

Rule 37(c)(1) provides that a party who fails to identify a witness as required by Rule 26(a) or (e) "is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Seventh Circuit has established four factors to guide a court in determining whether the sanction of exclusion is warranted: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier

- 36 -

date." *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003).

During six years of litigation, none of these witnesses were disclosed on the Defendants' Rule 26(a)(1)(A)(i) witness disclosures. (Donnell Decl. Exclude Untimely Disclosed Witnesses, Ex. A.) (ECF No. 207-1.). The fact that their names appear somewhere within what Ott states is about 35,000 pages of discovery and police reports including 3,000 names does not comply with Rule 26(a)(1)(A)(i) and Rule 26(e)'s continuing requirement that parties disclose the names of individuals likely to have discoverable information. Ott will be prejudiced because these witnesses were not properly disclosed, none were deposed, and, with the exception of Miller's possible testimony, Ott is uncertain about what they will testify about. The Defendants' offers of allowing depositions prior to trial will not cure the prejudice. The last brief on the motion was filed on March 12, 2015 (ECF No. 214), and this decision will be issued less from a week from the March 23, start of trial. At this juncture, taking depositions would divert the parties from trial preparation and, therefore, is also highly likely to disrupt the trial. As to bad faith or willfulness, that issue would require further inquiry. Based on the foregoing, Ott's motion to strike witnesses not previously disclosed is granted.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS**

- 37 -

**HEREBY ORDERED THAT:**

Ott's motions in limine (ECF No. 187) are **GRANTED** as follows:

1.      Non-party witnesses are **EXCLUDED** from the trial of this matter;

2.      Any evidence of Ott's prior arrests or criminal convictions is **EXCLUDED**;

3.      Evidence of Ott's 2014 ordinance violation is **BARRED**;

4.      Evidence of Hadaway's criminal convictions and arrests other than those that relate to the Payne homicide is **BARRED**;

5.      Reference to Ott or any witness being affiliated with a gang is **BARRED**;

6.      Reference to jurors as taxpayers or taxpayers footing the bill is **BARRED**;

7.      Reference to the Defendant officers' commendations, awards, or job evaluations is **BARRED**;

8.      References to prior parties in this lawsuit are **BARRED**; and,

9.      Reference to Ott's counsel as being from "out of town" is **BARRED**.

The Defendants' motions in limine (ECF No. 188) are **GRANTED** in part and **DENIED** in part as follows:

- 38 -

1. The Defendants' motion in limine to exclude any testimony, evidence or argument regarding the claimed failure by Buschmann or Wesolowski to disclose the 2003 DNA test results to Ott or Pray until 2007 is **DENIED**;

2. The Defendants' motion in limine to exclude any testimony, evidence or argument that Gwin was coerced to provide his statement or testimony against Ott is **DENIED**;

3. The Defendants' motion in limine to admit Gwin's prior statement and trial testimony and exclude any evidence, testimony or argument that Gwin lied to police is **GRANTED** as to the admission of Gwin's prior statement and trial testimony and **DENIED** as to the exclusion of any evidence, testimony or argument that Gwin lied to police;

4. The Defendants' motion in limine to exclude any testimony, evidence or argument regarding the destruction of any notes that may have been prepared by any of the defendant officers regarding any witness or suspect statements that they took in the Payne homicide investigation, including any expert testimony concerning the destruction of such materials is **DENIED**;

5. The Defendants' motion in limine to exclude any evidence or argument regarding any complaints of misconduct or regarding any

- 39 -

discipline of any defendant officer is **GRANTED**;

6.      The Defendants' motion in limine to exclude any testimony from Burems and evidence or argument regarding Burems' 2007 complaint regarding the Maniece homicide investigation is **DENIED**;

7.      The Defendants' motion in limine to exclude any mention of the State of Wisconsin Claims Board's decision pertaining to Ott is **DENIED**;

8.      The Defendants' motion in limine for redaction of "Ellis" is **GRANTED**.  The prefix "Ellis" **MUST BE REDACTED** from any Bates stamp on documents offered as exhibits at trial;

9.      The Defendants' motion in limine to exclude any testimony or evidence pertaining to DeValkenaere as a defendant in *Avery* is **GRANTED**;

10.      The Defendants' motion in limine to exclude any testimony, evidence or argument that Ellis was linked through DNA evidence to Payne is **DENIED**;

11.      The Defendants' motion in limine to exclude any testimony, evidence or argument that DNA testing linked Ellis to the deaths of other people is **DENIED**;

12.      The Defendants' motion in limine to exclude certain expert

- 40 -

opinion or testimony by Waller is **DENIED**; and

13. The Defendants' motion in limine to exclude the expert testimony of Lankford or, in the alternative, to exclude any opinion of Lankford as to the perpetrator of the Payne homicide or that Ott was wrongfully convicted is **DENIED**.

Ott's motion for leave to file a corrected pretrial report (ECF No. 205) is **GRANTED** and the Clerk of Court is **DIRECTED** to file Ott's corrected pretrial report (ECF No. 205-1). **Within 24 hours of the filing of this Order,** Ott must file a revised pretrial report that also designates the five pages of the A. Jones deposition transcript to be read at trial. **Within 24 hours of Ott's filing of his designation of such pages,** the Defendants may file an amended pretrial report designating any pertinent five-page portion of A. Jones' deposition transcript in response thereto.

Ott's motion to exclude witnesses who were not previously disclosed (ECF No. 206) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 17th day of March, 2015.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 41 -